# Hall *against* Mathias.

A mere entry by a widow into the land of her deceased husband, claiming it, and taking the rents and profits for twenty-one years, is no disseisin of the heirs at law; to make it such, there must be some plain, decisive, unequivocal act or conduct on the part of the widow, amounting to an adverse and wrongful possession and disseisin of the heirs.

ERROR to the Common Pleas of *Westmoreland* county.

John Hall and others against Henry Mathias. This was an ejectment for a tract of land. The plaintiffs claimed the land as heirs at law of David Hall, whom they proved went into possession of it in 1794, and there remained until 1809, when he died intestate, leaving the plaintiffs, his children, and a widow, named Susannah Hall, under whom the defendant claimed. David Hall left five children, who were from seven to twenty-four years of age at their father's death.

The defendant, to maintain his title, gave evidence to prove that the widow claimed the land as her own; that it was taxed in her name; that she leased it in 1812, in her own name; that she cleared land upon it; that afterwards, in 1820, she leased the property again in her own name; that a judgment was obtained against her, and her sons, and son-in-law, for a trespass, upon

which an execution issued and was levied on the land as her property; that it was called by the neighbours her property; that she declared to one witness, that she held it as her own, and at her death in 1838, by her will she devised it to the defendant. The proof by the plaintiffs was that they were occasionally upon the land after their father's death, and that some of their brothers and sisters died on it.

The opinion of the court to the jury, which was the subject of the errors assigned, was as follows: After stating the facts in relation to the possession of David Hall, the father of the plaintiffs, the court proceeded:

"In what manner, and for whose use did Susannah Hall occupy the premises? The defendant contends that she claimed the whole for her own exclusive use and benefit. He has shown, that from the death of her husband down to the time that she leased it to the defendant, the premises were taxed to her; that she leased it in 1812 to Henry Null, in her own name; that land was cleared to supply that which was wrought out and given up; that in 1820 or 1821, she leased, or gave the premises out to crop, to Hissam and David Hall; and after the action of trespass was brought against Susannah Hall, and the two sons and son-in-law, and judgment rendered against them, the land was levied on as the exclusive property of Susannah Hall; and it appeared that the land, in the neighbourhood, was called the Widow Hall's; and Morrow testifies, that he often heard her say, that she held it as her own property; and, finally, that she undertook to dispose of it by her last will and testament.

It is for this testimony that the defendant asks you to presume an ouster by Susannah Hall of her children, supposing that you should believe David Hall to have entered upon the land claiming in his own right. An ouster of one tenant in common by his co-tenant may be presumed by a jury from a tenant in common remaining in the exclusive possession, and taking the profits for 21 years. The widow, it is held, is not a tenant in common with her children. But we can see no difference in principle; she may have had a right to enter as guardian in socage for such of her children as were minors under the age of 14. And when a person enters generally without declaring the mode or right, the law refers such entry, to the legal right, which conferred the entry. But if such person disclaims such right, and enters claiming for himself, the entry is adverse, and it is not necessary to prove an express declaration of claim. That, like any other fact, may be inferred from circumstances—acts may speak louder than words; from the acts and conduct of the occupant. And if you are satisfied, from the whole of the testimony, that the widow claimed the land in her own right, and in exclusion of her children, possession continued for 21 years, would be an ouster of the heirs of David Hall.

[Hall v. Mathias.]

The plaintiffs, to repel the presumption of ouster, rely upon the fact that some of the children of David Hall were upon the land with the widow during the twenty-one years; that there was, in fact, an entry on the part of those children. An entry to avoid the Statute of Limitations must be accompanied with some exercise of dominion over the property. Some notorious act evidencing an assertion of title, if there is any evidence of such act accompanying their living on the land, would of course prevent the presumption of ouster, for it would discontinue the exclusive possession of the widow. But I do not see any act of the kind in the testimony. If they came back at intervals to see their mother, or went to live with her when sick, or out of employment, that would not be such an entry as would avoid the Statute of Limitations, and consequently would not be sufficient to repel the presumption of ouster by adverse possession on the part of the mother. The policy of the law requires all persons having rights or claims to be vigilant in pursuing them. In certain cases the legislature has fixed periods, beyond which no indulgence will be extended; and courts of justice acting upon the spirit of those provisions, and in analogy, have applied those limitations to cases within the mischief which induced the passage of such Acts of Assembly.

John Hall left the land a year or two after his father's death. If you should believe the widow claimed adverse, and there is no evidence of his return until after her death, we can see no shadow of evidence to support his claim in his own right. James Hall left the place shortly after he became of age, and it depends upon whether he made such an entry as we have described to you; whether he could be protected; if he did not make such kind of entry, then he would be barred. Dorcas Hall came of age sometime in 1819, and the statute would expire in 1830 or 1831. At what time Hamilton and David and Joseph came of age we do not know; but from the father's decease in 1809, the presumption is, that they were all of age before the widow had been in possession for 21 years. And the present suit not being commenced till August 1839, neither they, if living, nor their representatives, can be considered as being within the saving clauses of the Statute of Limitations.

If, upon the whole testimony, you should be of opinion that the widow held the possession adverse, from her husband's decease, claiming in her own right, taking the profits exclusively, and renting it as her own, down to the time of her decease, and no legal entry by the plaintiffs or those under whom they claim was made upon the land, your verdict should be for the defendant, even if you should believe that David Hall, in his lifetime, claimed the land as his own. But if you should believe that David Hall claimed as his own, and after his death his widow continued the possession for the benefit of her children, and holding it for their

use, your verdict should be for the plaintiffs for three undivided fifth parts of the land, with damages and costs.

Errors assigned:

1. The court erred in charging the jury that, "if they were satisfied from the whole of the testimony, that the widow claimed the land in her own right, and in exclusion of her children, possession continued for 21 years would be an ouster of the heirs of David Hall."

2. In charging the jury that the principle of law in regard to tenants in common, namely, that exclusive possession and taking the profits for a period of 21 years, by one tenant in common, is evidence from which a jury may presume an ouster of his co-tenant, was applicable to the case of a widow retaining the possession of the lands of her deceased husband.

3. In charging the jury that it was necessary for the heirs of David Hall to make a formal entry on the land, in order to avoid the Statute of Limitations, and to repel the presumption of ouster by the mother.

*Armstrong,* for plaintiff in error, contended that David Hall having entered on the land in dispute, in his own right, as an improver, or voluntary and under no one, (as one of defendant's witnesses expressed it,) in 1794, and continued in possession until 1809, (the time of his death,) during which time he extended his improvements by building a dwelling-house, still-house and barn, clearing land, &c., acquired a right transmissible to his children: and this possession continued by his children and widow for a period of six years after his decease, matured and perfected a legal title under the Statute of Limitations, which vested an estate in fee in his heirs, subject to the right of dower in his widow. *Overfield* v. *Christie,* (7 *Serg. & Rawle* 173). This being the case, the widow retained the possession as tenant in dower, and as the natural guardian of her minor children, as well as trustee for those of them who were of age. The presumption of law, therefore, is, that she continued to hold in the same right, and not adversely; and that after the minor children of David Hall came to their majority, the widow continued to hold in her own right as tenant in dower, for the one-third of the premises, and the residue as trustee for her children. *Pipher* v. *Lodge,* (4 *Serg. & Rawle* 310). And the facts that the land was taxed in the name of the widow from the death of her husband, down to the time that she leased it to the defendant, that she leased it to Henry Null in the year 1812, in her own name; that she gave the premises to David Hall and Hissam in 1821, to crop; that the land was levied on by the sheriff after the recovery in the action of trespass, as the property of Susannah Hall, and that the neighbours called it widow Hall's place, proved nothing; for they were all facts and circumstances that might exist consistently with her right as ten-

[Hall v. Mathias.]

ant in dower, and guardian and trustee of her children. The disposition of the land by will is the first and only act whereby she openly and avowedly expresses her disposition to hold adversely to her children; but this attempt to dispose of the premises by a last will and testament, is of too recent a date to establish a title retrospectively under the Statute of Limitations. The possession of the trustee becomes adverse, and the Act of Limitations begins to run only from the time the legal title is conveyed in violation of the trust. *Scott* v. *Gallagher*, (14 *Serg. & Rawle* 333). If a man enters on land as guardian in right of his wife, by which his possession would not be, at first, adverse, it would require some decisive act or declaration to make it so, to entitle him to hold by the Statute of Limitations. *M'Masters* v. *Bell*, (2 *Penn.* 180). When a person has a right of entry into lands, and does enter, it will always be taken that he entered under that right, and not as a trespasser. *Ib.*

2. The doctrine of ouster in relation to tenants in common, by reason of exclusive possession and perception of profits for a period of 21 years, is not applicable to the case of a widow remaining in the possession of land of which her husband died seised and possessed; nor will the Statute of Limitations aid her. Her possession under such circumstances is that of her children. *Cook* v. *Nicholas*, (2 *Watts & Serg.* 27). The widow being in possession at the death of her husband, retained or held that possession in the right which the law cast upon her; and not having made any new or distinct entry adverse to that right, no inference of an adverse claim could arise from any facts or circumstances short of an open avowal, that she claimed to hold the land wholly in her own right, and of which her children had full notice. 1 *Plow.* 293; *Co. Lit.* 391.

3. This we apprehend was clearly error; for, where the tenant in possession holds in the right of another, or as trustee, the statute does not commence running until the relation of trustee is clearly and unequivocally terminated. And the only distinct and unequivocal act of Susannah Hall, indicating a termination of that relation, was the attempt to dispose of the land by her last will and testament in July 1838, and of which her children had no notice until the 23d of April 1839, when the will was proved and put on record.

*Coulter* and *Beaver*, contra, argued that there could be no difference in the principle which would govern the case of a widow, and that of a co-heir, entering adversely upon land; nor was there anything to prevent either from so doing; and whether they entered adversely or not, was a matter of fact which could only be determined by the jury. The acts of the widow in taking the exclusive possession, declaring she claimed the land as her own, taking the exclusive profits, having the land taxed in her own

name, and all this for a period of nearly 40 years, and then dying in possession and devising it by her will, are certainly facts strong enough to justify a reference of them to a jury, who have said that the land was hers.  2 *Penn.* 180 ;  2 *Watts & Serg.* 299.

The opinion of the Court was delivered by

ROGERS, J.—This is an action of ejectment to recover the possession of a messuage and 100 acres of land in the county of Westmoreland.  The plaintiffs claim as heirs at law of David Hall, who took possession of the land in 1794, continued to reside upon it until his death in 1809, and during that time improved the property by clearing land, building a dwelling-house, still-house, and barn. He died intestate, leaving a widow and five children, four of whom were minors, the youngest about the age of seven years.  The widow continued in possession from the death of her husband until she died in July 1838, when she undertook to dispose of the property by will to the defendants, who are her devisees, and the question is whether the land was her property.  I throw the will entirely out of the case, as it is too plain to admit of argument, that unless the title vested in her during her life, a testamentary disposition cannot have the slightest effect on the title.  The defendants base their title on an alleged ouster, the mother having claimed the whole for her own exclusive use and benefit.  In support of their case they rely on the proof that the property was taxed to her, that she leased it in 1812 in her own name, and that she cleared land upon it ; that in 1820 or 1821 she leased the property again, and that afterwards, on a judgment rendered against her and her sons and son-in-law, the land was levied on as the exclusive property of Susanna Hall ; that the land was called by the neighbours the widow Hall's ; that one witness heard her say that she held it as her own property ; and finally, that she undertook to dispose of it by her last will and testament.

The court, assimilating the cases to a tenancy in common, have instructed the jury that an ouster may be presumed.  But, is this such a case as that a jury would be at liberty to presume an ouster? It is held, that the possession of one tenant in common is *primâ facie* evidence of the possession of his co-tenant, unless it be attended with circumstances *demonstrative* of an adverse interest, such as a demand by his co-tenant of his share of the rent, and a refusal to pay, saying he claims the land.  *Phillips* v. *Gregg*, (10 *Watts* 158).  A mere entry by one co-heir into the land of the ancestor claiming it all, and taking the rents and profits for 21 years, is no disseisin of the other heirs.  To make it such, there must be some plain, decisive, unequivocal act or conduct on the part of the heir so entering, amounting to an adverse and wrongful possession in himself and disseisin of the others.  *Hart* v. *Gregg*, (10 *Watts* 185).  There must, as Mr Justice Sergeant says, be some notorious act done ; that declarations alone will not amount to a

[Hall v. Mathias.]

disseisin of the co-tenant. Thus, in *Reading's Case*, (*Salk.* 392), it is said, that between tenants in common there must be an actual disseisin, turning him out, hindering him to enter, &c.; and a bare perception of profits is not enough. So in *Fairclaim* v. *Shackleton*, (5 *Bur.* 2604), it is held that there must be actual disseisin proved. So in *Watson* v. *Gregg*, (10 *Watts* 289), it is ruled, that an ouster of the other heirs by him who enters on real estate, can only be by some clear, positive and unequivocal act, amounting to an open denial of the right and putting them out of possession. Mere declarations will not answer the purpose.

Supposing these principles to be applicable to this case, what evidence was given that the mother turned her children out of possession, or that she ever attempted to hinder or prevent them from entering on the premises? On the decease of the ancestor the possession is cast on the heirs, subject to the right of dower of the widow. Instead of assigning her dower, the family remain as before the father's death, the mother managing the property, and supporting the children. The evidence shows that it was always a home for those who chose to remain, and for those who at any time might choose to return and reside on the property. There is nothing in the case to bring it within the principles which have been stated. The arrangement was a very convenient one, and perhaps was most advantageous to all parties, as it was the only mode by which the family could be kept together, and be afforded a support; particularly for the younger members of the family. The law is not so unreasonable as to compel children to deal harshly with the parent at the risk of being defrauded of their patrimony. There is, in truth, not a particle of proof that the children were ever out of possession of the land; nor has any act been shown which indicates any intention to oust them from the possession. All the evidence is perfectly consistent with her relation to the estate as tenant-in-dower, and as guardian to the minor children and the parent of her other offspring. The presumption is, that she continued to hold in the same right as at the death of her husband, and this presumption has not been rebutted by proof of any clear position and unequivocal act amounting to a denial of the right of the children. She neither put them out of possession, nor has she ever hindered them from entering into possession of the property.

Judgment reversed; and a *venire de novo* awarded.