## Mead *versus* Leffingwell.

1. In 1849 A. conveyed land to B. and C., his brothers, who took immediate and continued in exclusive and uninterrupted possession until 1872. By virtue of a deed given by the sheriff in 1853, in pursuance of a sale of this land on a judgment obtained upon an allegation that the conveyance of A. to his brothers was fraudulent as to creditors, plaintiffs in 1872 brought an action for its recovery, and contended that their claim was not barred by the Statute of Limitations because the statute operated not upon the possession of the occupant but upon the right of entry of the owner, and as this right of entry did not accrue until 1853, the title of the defendants by virtue of the statute was not complete: *Held*, that the statute would not admit of such a construction and that a possession such as that of defendants for twenty-one years, under a claim of ownership, whether the original entry was with or without color of right, created a perfect title.

[Mead *v.* Leffingwell.]

2. It was error to instruct the jury that after such a lapse of time the operation of this deed could only be defeated by clear, positive, direct and undoubted proof that it was given without consideration and to hinder and delay creditors.

3. Whether if this suit had been brought without unreasonable delay the refusal to hear the evidence of the plaintiff in regard to the declarations of A., to impeach his deed to his brothers, would be right or wrong, undecided.

November 23d 1876. Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Error to the Court of Common Pleas of *Crawford county:* Of October and November Term 1875, No. 93.

This was an ejectment, brought by E. D. Mead and wife against Legrand, Charles, James and William Leffingwell, to recover certain lots of ground in Woodcock, Crawford county.

The facts were these: Prior to 1844, Andrew B. and Orsimus Leffingwell, brothers, were partners in a tavern and store in Woodcock. Orsimus died in that year, and soon after his decease another brother, Alphonso, went into partnership with Andrew B. Under proceedings in the Orphans' Court, Andrew B. became the owner of all the property of his deceased brother Orsimus, and the deed to him from the guardian of the minor children of Orsimus was acknowledged April 9th 1847. Besides the tavern stand, other town lots and real estate were bought by Andrew B. and Alphonso. On the 26th of September 1849, Andrew B. sold his interest in the tavern and store, and all ·his property, to his brothers James and Alphonso, and shortly thereafter left the county. · Benjamin Dewell, the administrator of Orsimus, held a bond of Andrew B. and his father Andrew, for $939.88, which was given for the interest of Orsimus in the store, which bond the administrator turned over to the guardian, who brought suit thereon to November Term 1849. On the 15th of July 1850, judgment was entered for $1196.64, and on this judgment all the real property of Andrew B. which he had conveyed to his brothers was sold by the sheriff to Eliphalet Williams, the grandfather of the children of Orsimus. The sheriff's deed was acknowledged on the 15th of February 1853. On the 22d of January 1872, Williams conveyed the same property to Mrs. Mead, one of the plaintiffs, who brought this action, claiming that the deed of Andrew B. to his brothers, on the 26th of September 1849, was fraudulent, and intended to hinder, delay and defraud creditors, especially the heirs of Orsimus Leffingwell.

On the trial before Lowrie, P. J., Mrs. Mead, the plaintiff, was offered to prove certain declarations of Andrew B. with reference to the conveyance of the land in dispute. The defendants objected, on the ground that she could not testify as to declarations of said Andrew B. to affect the title of parties claiming under his deed, and the court sustained the objection.

[Mead v. Leffingwell.]

The defendants submitted the three following points, all of which the court affirmed :—

3. That if Andrew B. Leffingwell left the state and went to St. Louis shortly after his conveyance of the land in dispute to Alphonso and James Leffingwell, in September 1849, and they took possession immediately or soon after the date of that deed, and held and occupied it exclusively as their own for twenty-one years and more without interruption before this suit brought, the statute of limitation commenced to run from that time; and more than twenty-one having elapsed since the said possession begun to the bringing of this suit, the defendants have a complete title to the premises by virtue of the statute, and the plaintiffs cannot recover.

4. That the law is exceedingly suspicious of stale demands, and the deed under which defendants claim having been executed and delivered in 1849, and all the parties to the transactions being now dead, the law presumes that it was made for a good and valid consideration and without fraud. And after such a lapse of time, the operations of this deed can only be defeated by clear, positive, direct and undoubted proof that it was given without consideration, and to hinder and delay creditors.

5. The declarations of Andrew B. Leffingwell, after parting with his title to Alphonso and James Leffingwell, were not evidence to impeach their title.

The verdict was for the defendants, and the plaintiffs took this writ, assigning for error the rejection of the evidence of Mrs. Mead, and the affirmance of the foregoing points of defendants.

J. B. Brawley and D. M. Farrelly, for plaintiffs in error.—At the time of the execution of the deed from Andrew to Alphonso and James, neither Williams nor plaintiffs had a right of entry. The 2d section of the Act of Limitations of March 26th 1785 refers to the time when the real owner may make entry or bring his action. Nothing is said as to the possession of the occupant. The statute does not operate on the possession of the intruder, disseisor or trespasser, but operates on the right of entry and the right of action residing in the owner : Hinman v. Cranmer, 9 Barr 40. The statute does not begin to run until a right of entry exists : Shepley v. Lytle, 6 Watts 500 ; Hall v. Mathias, 4 W. & S. 331. The statute will not receive a liberal construction to protect fraud.

The instruction of the court as to the degree of proof to defeat the deed was erroneous. No case can be produced nor principle of law invoked to show that with the lapse of time the proof to establish fraud must grow clearer, more direct and positive. The lapse of time may make it more difficult to prove fraud, but has no effect on the degree or character of the proof: Abbey v. Dewey, 1 Casey 413 ; Reinhard v. Keenbartz, 6 Watts 93 ; Rogers v. Hall, 4 Id. 361 ; Stauffer v. Young, 3 Id. 455.

[Mead *v.* Leffingwell.]

So far as the declarations of Andrew went to prove fraud they were competent evidence.

*W. R. Bole*, for defendants in error.

Mr. Justice WOODWARD delivered the opinion of the court, January 2d 1877.

Andrew B. Leffingwell was the owner of the land in dispute, subject neither to trust nor lien, on the 26th of September 1849, when he conveyed it to his brothers Alphonso and James. The title of his deceased brother, Orsimus Leffingwell, had been divested and acquired by himself by the deed of the guardian of the children of Orsimus, made on the 9th of April 1847, under an order of the Orphans' Court. It may be taken to have been established by the verdict, under the charge of the court below, that " Alphonso and James Leffingwell took possession of the land immediately or soon after the deed to them, and held and occupied it exclusively as their own for twenty-one years and more before this suit was brought." In the transfer of the title no concealment was attempted. The deed was placed on record on the 11th of October 1849, fifteen days after its execution. This suit was not commenced until the 6th of November 1872, when more than twenty-three years had been suffered to go by.

At the time of the conveyance Andrew B. Leffingwell was indebted to the estate of his brother Orsimus in the sum of $939.88, for which the administrator held his bond. This, however, had no connection with the purchase-money for the land bought at the guardian's sale. The bond was given for the interest of Orsimus in a store which had been jointly owned. Suit was brought on the bond to November Term 1849, and judgment was entered on the 15th of July 1850, for $1196.64. On the allegation that the deed from Andrew B. to Alphonso and James Leffingwell had been made for the purpose of hindering and defrauding creditors, the land conveyed by that deed was levied on and sold to Eliphalet Williams, the grandfather of the children of Orsimus. The sheriff's deed was made to Mr. Williams on the 18th of February 1853. He transferred the title to Mrs. Mead, one of the plaintiffs, on the 22d of January 1872.

Notwithstanding the lapse of time between the conveyance under which the defendants claimed title and the commencement of this suit, the plaintiffs insisted on the right to recover on the ground that the right of action of Eliphalet Williams did not accrue until he received his deed from the sheriff, and that the Statute of Limitations only then began to run. In support of this view reliance was placed on principles decided by this court in Shepley *v.* Lytle, 6 Watts 500, and Hall *v.* Mathias, 4 W. & S. 331, and on the ruling of COULTER, J., in Hinman *v.* Cramer, 9 Barr 40, that " the statute

[Mead v. Leffingwell.]

does not operate on the possession of the intruder, disseisor or trespasser, but on the right of entry and the right of action residing in the owner, and provides that either or both shall be used within twenty-one years after the same first descended or accrued."

It is believed that the acceptance of the views of the counsel for the plaintiffs would be the introduction into the construction of the Statute of Limitations of a principle equally novel and unsafe. The actual, visible, notorious, hostile, exclusive, continuous and uninterrupted possession of land for twenty-one years, under a claim of ownership, whether the original entry was with or without color of right, creates a perfect title, sufficient not only to support a defence, but to support a recovery in ejectment: Watson v. Gregg, 10 Watts 295; Hollingshead v. Nauman, 9 Wright 140; Pederick v. Searle, 5 S. & R. 240; and Hole v. Rittenhouse, 7 Harris 306. This rule was made subject to a provision for then existing rights by the 3d section of the Act of the 26th of March 1785, and the provision in favor of persons *feme covert, non compos mentis,* imprisoned, beyond the seas, and without the United States, by the 4th section of that act. When possession of this land was taken by Alphonso and James Leffingwell, there was no right subsisting in any persons to be protected by the saving clauses of the statute. The legal title was vested in the grantees by a deed duly executed and promptly recorded. The claim growing out of the fraud alleged to have been practised was in full force then. While, if the deed was indeed executed in bad faith, Andrew B. Leffingwell, as a *particeps criminis,* could not have set it aside, the law had vested in his creditors the right by substitution to annul the conveyance, and pursue the land of the fraudulent grantor in the hands of the fraudulent grantees. But they were bound to act at least with reasonable vigilance and vigor. It has been said over and over again by all the courts, that the interest of the community demands that some line shall be drawn where litigation shall stop, and that statutes of limitation are statutes of repose. In this instance the action was brought twenty-three years after the deed attacked was made, and the suit by the administrator of Orsimus against Andrew B. Leffingwell was begun more than twenty-two years after judgment in that suit was obtained, and nearly twenty years after the sheriff's deed was made to Eliphalet Williams. At the time of the trial the original parties were all dead. They were charged with a conspiracy to defraud Andrew B. Leffingwell's creditors. It can readily be conceived that after the lapse of twenty-three years the means of meeting such a charge would, in great part, have ceased to exist. By the destruction of papers, and by the death, removal and forgetfulness of witnesses, it must always happen, in so long a period, that grave havoc will be made of the instruments of evidence. If personal property had been the subject of controversy between these parties, the plaintiffs would

[Mead *v.* Leffingwell.]

have been barred after six years from the discovery of the fraud. And yet the allegations here could only be made out by the parol proof that would be given in an ordinary personal action. . The very purpose in view was to upturn a sale and conveyance of land, followed by notorious possession, upon the testimony of witnesses as to their recollections of conversations and declarations they had heard twenty-three years before. There is no law to warrant a construction of the Statute of Limitations that would subject the title of these defendants to such a hazard. In Hinman *v.* Cramer, *supra*, the only question was whether the entry that had been made on the land was sufficient to toll the statute. In Shepley *v.* Lytle, a party in possession of land avowed his possession as against a tenant in common with him to be adverse as early as 1814. But he held under his father, from whom the land descended, by a lease which did not expire until 1817. Suit was brought in 1836, and it was held that but nineteen years had run from the time when the right of action accrued. All that Hall *v.* Mathias decided was that the mere entry by a widow into the land of her deceased husband, . claiming it, and taking the rents and profits for twenty-one years, is no disseisin of the heirs at law. In Kribbs *v.* Downing, 1 Casey 399, it was ruled that "when a person against whom a fraud has been perpetrated, lies by for twenty-one years without causing it to be investigated, he will not be permitted to show it." Lynch *v.* Coxe, 11 Harris 265, presented the question of a resulting trust. In entering the judgment, BLACK, C. J., said : " We cannot decide on remote transactions without the aid of presumptions. After witnesses are dead and papers lost, it is impossible to know what were the true original merits of the case. Such presumptions are in favor of the legal title, when neither party is in possession ; but when the *cestui que trust* occupies the land, they are wholly against the trustee." These defendants are entitled not only to the benefit of all presumptions arising from a recorded deed accompanied by an uninterrupted and unchallenged possession, but to that absolute protection which it was the very purpose of the Statute of Limitations to afford.

The remaining assignments of error need but brief discussion. It · is not worth while to inquire whether, if the suit had been brought without unreasonable delay, the refusal to hear the evidence of Mrs. Mead in regard to Andrew B. Leffingwell's declarations to impeach his deed to his brothers, and the withdrawal of the testimony as to those declarations by other witnesses, would have been right or wrong. The element of time was inherent in the cause in every aspect, and could not be disregarded. As a mere abstract proposition, the answer to the fourth point of the defendants was erroneous. Fraud could probably never be established to the satisfaction of a jury, if " clear, distinct, positive and undoubted evidence" were required to make it out. The work of conspirators is not done

[Mead *v.* Leffingwell.]

in the light of the open day. They do not proclaim their purpose nor record their movements. Their practices are secret and concealed, and can be uncovered only by a resort to such evidence of the circumstances, relations, acts and motives of the parties as will serve reasonably to disclose the nature of the transaction charged against them. But the element of time was involved in this, as in all the other branches of the case. All presumptions were in favor of a conveyance in due form of land from which there had been no eviction and to which there had been no counter claim; and after twenty-three years of acquiescence, the attempt to overbear those presumptions was made too late.

Judgment affirmed.