LUMLEY v. HAGGERTY.

1. ADVERSE POSSESSION—LIFE TENANT AND REMAINDERMAN.
      The possession of a life tenant cannot be adverse to the re-
      mainderman.[1]

2. SAME—OCCUPANCY OF HOMESTEAD BY WIDOW.
      Under 2 How. Stat. § 5744, providing that a widow entitled
      to dower in the lands of which her husband died seised may
      continue to occupy the same with the children or other heirs,
      so long as the heirs or others interested do not object, without
      having the dower assigned, the peaceable occupancy of the
      homestead by the widow and minor children, after the re-
      nunciation of a life estate granted to her under the will, not
      followed by an assignment of her dower, is not adverse to
      the remainderman.

Error to Wayne; Frazer, J. Submitted June 19, 1896.
Decided July 31, 1896.

Ejectment by Clara Lumley against Henry H. Hag-
gerty and others. From a judgment for defendants on
verdict directed by the court, plaintiff brings error.
Affirmed.

*Edgar Weeks* (*John Atkinson*, of counsel), for appel-
lant.

*Charles K. Latham*, for appellees.

LONG, C. J. In 1853, Hugh Haggerty was the owner
of about 400 acres of land in the township of Springwells,
Wayne county, this State. On September 21st of that
year he made a will, by which he gave to his wife, Fannie,
a life estate in all the lands of which he should die seised,

---

[1] The authorities as to adverse possession against remaindermen
and owners of future estates are found in an extensive note to *Gin-
drat* v. *Western Railway of Alabama,* (Ala.) 19 L. R. A. 839.

with the remainder over to his son Henry Haggerty. On the day before the will was executed, he had executed deeds of most of his real estate to his children. His wife did not join in these deeds. He died the same day the will was executed. Within a year after the death of Hugh, his wife filed in the probate court a written declination to take under the will, containing a request that her dower might be assigned to her in the lands of her deceased husband. An order was made requiring the parties interested in the estate to appear upon the hearing of the petition to assign the widow's dower, but no further proceedings were ever taken in that matter. The deeds made by Hugh did not cover the homestead, and after his death the widow continued to live there with the minor children, and occupied the homestead up to the time of her death. This homestead covers the 33 acres now in controversy here. The widow, Fannie Haggerty, made her will on January 6, 1872, devising to her daughter, the plaintiff in this case, the residue of her estate after the payment of her debts and funeral charges. She died June 7, 1893. It appears that Henry Haggerty surveyed the homestead in the year 1880, and made an equal division of it to his four children, one of whom has since died. The other three are defendants in this case, Robert Hooten being made a party by reason of his tenancy under one of the children of Henry.

This action is in ejectment. The plaintiff claims through the will of her mother; the defendants, through deeds from their father. Plaintiff's contention on the trial was that, Fannie Haggerty having filed her declination to take under the will of her husband, her life estate terminated, and, her dower not having been assigned, she had no possessory rights in the property, but that Henry, having the estate in remainder under the will, had a right of entry immediately thereafter. It was further contended by the plaintiff that Henry never asserted any rights in the property thereafter, but, on the contrary, acquiesced in the rights

which the widow claimed; that the widow thereafter exercised acts of ownership over the land, claimed title, and that it was thereafter called and recognized as hers; that roads and ditches were opened through the land, and the damages awarded to her, and for the opening of the ditches the widow paid the expenses; that she had paid the taxes, and had cut and sold wood off the premises without objection from Henry. It is also claimed that a settlement was had between the widow and Henry at or about the time she declined to take under the will, but just what settlement was made, if any, is not shown by this record. Defendants contended on the trial that the declination filed by the widow was defective in several particulars, and that the fact that she never carried her proceedings forward for the assignment of her dower is evidence that she abandoned them, and therefore claimed as a life tenant under the will; that this fact is shown by two leases which were made by her, some time before her death, to the husbands of two of her daughters, to continue for and during her own natural life. At the close of the testimony the court below directed the verdict in favor of the defendants.

Counsel for plaintiff contend that the question should have been submitted to the jury to determine the character of the possession of the widow for the 40 years she lived on the homestead after the death of her husband,— whether she was there by the consent of the children, claiming as a life tenant, or claiming to hold adversely to Henry. If the defendants' first contention be correct, —that the declination made by the widow was ineffectual to end her life estate,—that would end the case; for, being in as life tenant, her possession could not be treated as adverse to the remainderman. But, if this contention be not sustained, we are of the opinion that there is nothing appearing upon the record showing, or tending to show, that the widow was holding adversely to Henry. 2 How. Stat. § 5744, provides that—

"When a widow is entitled to dower in the lands of which her husband died seised, she may continue to occupy the same with the children or other heirs of the deceased, or may receive one-third part of the rents, issues, and profits thereof, so long as the heirs or others interested do not object, without having the dower assigned."

There is nothing in the record, that we are able to discover, showing, or tending to show, that any of the heirs, or others interested, during all the time the widow occupied the homestead, ever made objection to such occupancy by her. It was the homestead of her husband and herself and family. At his death she continued in possession with the minor children, the youngest of whom was nine years of age. Others were minors. Even after the declination to take under the will, the widow made no change in her surroundings, kept the family at the homestead until they married, and from that time forward no one seems to have made complaint. Such holding by her, under the circumstances here shown, cannot be construed as adverse to Henry, who was given the remainder by the will. Her right to occupy the premises continued until her dower was assigned, or some steps were taken to partition the estate. *Zoellner* v. *Zoellner*, 53 Mich. 620, 627; *Rea* v. *Rea*, 63 Mich. 263; *Kitchell* v. *Mudgett*, 37 Mich. 81; *Benedict* v. *Beurmann*, 90 Mich. 396. The continuance of the widow upon the homestead after her disclaimer under the will was not an ouster of Henry, but, under the statute above quoted, was a legal entry, and, so long as Henry and the other heirs made no objection, her continuance in possession was not adverse. *Hall* v. *Mathias*, 4 Watts & S. 331; *Cook* v. *Nicholas*, 2 Watts & S. 27.

We think the court below very properly directed the verdict in favor of defendants. The judgment must be affirmed.

The other Justices concurred.