CARPENTER v. CARPENTER.

1. DEEDS—RECORD—CERTIFIED COPY—ERROR CURED.

Error in admitting in evidence a certified copy of the record of a deed attacked as invalid is cured by the striking of the copy and the introduction of the original.

2. SAME—VALIDITY—WITNESSES.

A deed without witnesses is effective to convey title.

3. SAME—EXECUTION AND DELIVERY—EVIDENCE.

Proof of the signatures of the grantor, the sole subscribing witness, and the acknowledging officer in a deed, with evidence of its possession 20 years thereafter by the attorney of the assigns of the grantee, is sufficient to establish *prima facie* the execution and delivery of the deed.

4. ADVERSE POSSESSION — OCCUPANCY BY WIDOW — RIGHTS OF HEIRS.

The contention that a widow acquired title by adverse possession to premises in which she had dower rights, as against the heirs, based on the alleged facts that she made the statement during her occupancy that she could hold the premises as against the children, and considered herself the owner, that those of the children who continued to live with her did so in subordination to her control, and that she devised the property to a son and a daughter, is not sustained, where it appears, further, that it was agreed by the heirs, on the death of the ancestor, that the widow might occupy the premises in consideration of her promise to build a house thereon, that she at no time denied the right of the heirs to the property after her death, and that the devise was not of the specific property, but of "all of her property" generally.

5. SAME—RES JUDICATA.

In an action of ejectment, the evidence tended to show that in a previous ejectment suit involving other lands, brought against plaintiff's husband by defendant's grantor, the latter asserted title by adverse possession; that a certain deed to the plaintiff was there put in evidence, and the claim of adverse possession resisted by her husband with her acquiescence and in her behalf; that she herself was called as a witness; that the jury sustained the adverse claim; and that, while the judgment therein related to other lands, the title de-

| | |
|---|---|
| 126 | 217 |
| s85NW | 576 |
| f130 | 214 |
| f130 | 215 |
| 126 | 217 |
| s136 | 363 |
| s136 | 366 |

pended on the identical questions raised in the later suit. *Held*, that, even if the facts were not so conclusively established as to show that the question of adverse possession was *res judicata* as a matter of law, at least the jury might find it so.

6. EJECTMENT—OUSTER—ADMISSION IN PLEA.
    In an action of ejectment, the plea and notice of defendant, being part of the record, need not be formally introduced in evidence to make them available for any admission of ouster they contain.

7. SAME—APPEAL—RES JUDICATA.
    Where, on appeal in an action of ejectment, it was held that ouster was admitted by defendant's plea and notice, the question is not open on a subsequent trial.

8. SAME—HUSBAND AND WIFE—CO-DEFENDANTS—ADMISSIONS.
    In an action of ejectment against a husband and wife, admissions made by the husband are admissible as against himself.

Error to Ingham; Person, J. Submitted January 29, 1901. Decided April 2, 1901.

Ejectment by Cora M. Carpenter against Augustus D. Carpenter and wife. From a judgment for plaintiff on verdict directed by the court, defendants bring error. Reversed.

*Frank L. Carpenter* (*Russell C. Ostrander*, of counsel), for appellants.

*Smith & Hood*, for appellee.

HOOKER, J. In 1859, Benjamin Carpenter died seised of two village lots in Lansing, being lots 10 and 12 in Seymour's subdivision. They descended in equal shares to his five children, subject to the rights of his widow, Maria Carpenter. The widow maintained possession of the premises until her death, in 1885, under an oral arrangement that she should be permitted to do so, consented to by all of the children soon after Benjamin Carpenter's death, and subsequently acquiesced in, not only by them, but by the grantees who claimed title under the

oldest daughter, Miriam; under which arrangement the widow erected a house on lot 10. This daughter, Miriam, being under obligations to one Abigail C. Rogers, a teacher of Miriam, and an acquaintance and friend of the family, gave her a quitclaim deed of her interest in the two lots. This deed was executed in 1864, and had but one witness. In 1869, Abigail C. Rogers died, leaving a will devising both lots to Delia Rogers, from whom John I. Carpenter, a brother of Miriam, obtained a quitclaim deed of both lots in September, 1885, and who in turn deeded to his wife, the plaintiff, on September 30, 1885; the last deed not being recorded until 1888.

The defendants do not deny that upon the death of Benjamin Carpenter the land descended to his five children, subject to the right of dower of Maria, but they allege that John I. Carpenter parted with his interest through a deed to Augustus, given in 1885, and that he never acquired title to Miriam's interest, for the reason that Abigail C. Rogers took no title under the quitclaim from Miriam, because—*First*, said deed was not lawfully executed, having but one witness; and, *second*, its delivery was not proved. We may remark, parenthetically, that, if this point is well taken, John I. inherited an undivided interest from Miriam in 1880, and that it passed to Augustus under the deed from John I. in 1885. There is still another claim made by the defendants. It is that Maria, the widow, acquired title to these lots by adverse possession against all of her children, or at least against Abigail C. Rogers and her grantees; and that upon her death it passed, under her will, to Frank and Lucy, two of the five children of Benjamin Carpenter, and subsequently to Augustus, by deed from Frank and Lucy. Moreover, it is said that this claim of adverse possession was adjudicated and upheld in a former proceeding. The will of Maria Carpenter is not printed, but the statement is made in the record that it contained a residuary clause devising and bequeathing all of her property, except lot 13, to her daughter Lucy C. Jones and son Frank L. Car-

penter, share and share alike. The circuit judge directed
a verdict for the plaintiff, and defendants have appealed.

The questions in the case may be summarized as fol-
lows:

1. Did plaintiff show a *prima facie* title? (*a*) Was
the deed to Abigail effective? (*b*) Was there proof of
delivery? (*c*) Should either of these questions have been
left to the jury?

2. Was there evidence tending to show that Maria
obtained title in fee by adverse possession?

3. (*a*) Has there been an adjudication of that question
sustaining such title; and (*b*) if so, is it conclusive in
this case?

4. Some questions relating to the introduction of evi-
dence.

The defect in the execution of Miriam's deed was the
absence of a second witness, the only witness being the
notary who took the acknowledgment, and who also
attested the signature under the words "Signed, sealed,
and delivered in presence of." This deed was recorded
after it came to the possession of John I. Carpenter, and
a certified copy was introduced in evidence, against de-
fendants' objection; but it was subsequently stricken from
the record, and the original deed was introduced. By
striking the certified copy from the record, any error
arising from its admission was cured. It is settled in this
State that a deed without witnesses is effective to convey
the land described in it. See *Dougherty* v. *Randall*, 3
Mich. 581; *Price* v. *Haynes*, 37 Mich. 487; *Baker* v.
*Clark*, 52 Mich. 22 (17 N. W. 225); *Fulton* v. *Priddy*,
123 Mich. 298 (82 N. W. 65).

John I. Carpenter testified that he was a brother of
Miriam. He identified the deed from her to Miss Abigail
C. Rogers as one which was turned over to him by Mr.
Robson, who had charge of Miss Delia Rogers' property,
in the year 1885, at a time when he procured a deed from
Delia Rogers. He testified that he was familiar with
Miriam's signature, and that her signature was upon said
deed; and that, upon the day the deed was made, Miriam

said that she was at Wiley's office, and deeded her interest in her father's estate to Abigail C. Rogers; and that she showed some money, which she said that she had received in part payment for the same from Miss Rogers. The signature of Wiley as subscribing witness and notary was also proved. It is contended that the declarations of Miriam were not admissible; but we think it unnecessary to pass upon that question. There was sufficient uncontradicted evidence to establish *prima facie* the execution and delivery of the deed to Abigail C. Rogers, without the declarations of Miriam. The only testimony that can be urged as showing a want of delivery is an admission by John I. Carpenter on cross-examination that on a former occasion he told a Mrs. Smith that in settling up his father's and mother's estates "we found a deed to Miss Rogers, which was not recorded." This admission is not necessarily inconsistent with all of the other testimony in the case, and can be readily reconciled with it. We are of the opinion, therefore, that the judge was warranted in finding delivery proved by undisputed evidence.

We have next to inquire whether the question of adverse possession should have been left to the jury. The widow had an unquestioned right of dower in these premises. She was in possession with her husband, and continued such possession. So far from claiming them as her own at the outset, she insisted on her right to occupy them, and negotiated with the children regarding such privilege. She agreed with them to build a house, and did so, as a consideration for their agreement to permit her to hold the premises. It cannot be claimed that such was a consideration for them relinquishing all title, for in that case they would not reap any benefit. It would be no more than an agreement on her part to build a house on the land if they would give it to her. It is clear that such was not the understanding, as one or another of the children occupied the premises with her as long as she occupied them; in subordination to her right of control, it is true. There is testimony that the widow told her son

Frank and daughter Lucy, to whom she devised her property, that she considered that she had title or an ownership in the land; that she could hold against all parties,—her children, Miss Rogers, or anyone else; and Frank told her that, so far as the children were concerned, except John, he thought there was no question but that they agreed with her. Augustus testified that he had heard his mother say that she had taken counsel about the nature of her occupancy, and would hold possession whether they liked it or not, and claimed that she was the complete owner, and that he recognized it. But it is said that all of this time she was occupying under a tenure, which had for its foundation her right of dower, supplemented by the consent of the children. From the first she maintained that she ought to have the place because her money paid for it; but it is plain that all knew that the title was not in her, and her conduct was inconsistent with an intention to claim the fee against the children, or a denial of a remainder in the children after the termination of her interest. We think that she asserted no other title than her dower interest, and that the case falls within the cases which hold that the statute does not run against the heir during such an occupancy. The undisputed proof shows that the widow occupied in privity with the heirs when she arranged for exclusive possession in consideration of the house which she agreed to build and afterwards built upon the premises. We find nothing to change this relation, or in contravention of it, except the testimony that when Miss Rogers' deed was mentioned, and afterwards, she asserted that she could hold the premises against the children, or any deed they might give, and considered herself the owner of the land. It is claimed she afterwards devised the lot; but she only devised her property, whatever it was. During her occupancy one or another of the children lived on the premises with her, and part of the time some, if not all, of them were minors. She did not enter in opposition to their rights, and we do not find an expression of an intention

to deny their rights to the property after her death. *Campau* v. *Lafferty*, 50 Mich. 114 (15 N. W. 40); *Lumley* v. *Haggerty*, 110 Mich. 552 (68 N. W. 243, 64 Am. St. Rep. 364); *Bowen* v. *Brogan*, 119 Mich. 218 (77 N. W. 942, 75 Am. St. Rep. 387); *Brown* v. *Moore*, 74 Mo. 633; *Null* v. *Howell*, 111 Mo. 273 (20 S. W. 24).

The claim that her adverse title has been sustained by a former adjudication rests upon the following facts: In 1887, John I. Carpenter and a man named Sautelle, whom he had put in possession of the south three acres of lot 10, were sued in ejectment by Frank and Lucy Carpenter, who claimed to own the premises under the will of their mother. It is claimed by the defendants that upon the trial of that case the deed from John I. Carpenter to this plaintiff was put in evidence, and Cora Carpenter was present as a witness, and that in opposition thereto the claim that Maria obtained title by adverse possession was made, and the jury found in favor of the plaintiffs. It is contended that the verdict concludes this case, because both lots 10 and 12 were included in all of the deeds from Miriam to Cora Carpenter, and Frank and Lucy took both lots under the will of their mother; that Sautelle was placed in possession by John, acting as agent for Cora; and that, while not a party of record, she was a witness upon that trial, and the defense was made upon her behalf by John I. Carpenter, her husband, with her acquiescence. The evidence in the case tends to show the adjudication of the question involved in this action. True, it related to other lands, but the adjudication as to such lands, if held by both parties under the same titles and claims as are relied on here, depended on the identical question raised here, and, being decided once, is conclusive between the parties. The action was brought against Cora Carpenter's tenant and agent, and there is testimony tending to show that it was defended by her through her agent, if not personally. She clearly knew of the action, and was present, asserting her title as a witness, while her husband and agent and her tenant conducted the

defense. See Herm. Estop. § 152, and notes. We are of the opinion that the testimony was sufficient to justify a charge that the question was *res adjudicata*. At least, there was a question for the jury.

It is contended that the plea and notice in the cause should not have been admitted to prove ouster. The plea and notice were part of the record, and need not have been formally introduced to make them available for any admission they contained. See Cir. Ct. Rule No. 7. Upon a former hearing of this cause (119 Mich. 167, 77 N. W. 703) it was held that ouster was admitted by this plea and notice, which settled the question for subsequent trials. It is not an open question on this record.

Upon the trial, plaintiff called A. D. Carpenter as a witness. It was objected that, being the husband of his co-defendant, he could not be permitted to testify without her consent. This objection was sustained. John I. Carpenter was then called, and permitted, against defendants' objection, to testify to statements made by A. D. Carpenter upon another occasion. It is urged that such admissions were open to the same objection. This is doubtless true so far as the interests of the wife are concerned, but, as he was himself a defendant, his admissions, if not his testimony, were admissible against him.

The judgment is reversed, and a new trial ordered.

The other Justices concurred.