[File No. 7051.]

MATILDA E. DESAUTEL, Respondent, v. NORTH DAKOTA WORKMEN'S COMPENSATION BUREAU, Appellant.

(28 NW2d 378)

Opinion filed July 10, 1947

*Nels G. Johnson,* Attorney General, and *P. B. Garberg,* Assistant Attorney General, for appellant.
*Depuy & Depuy,* for respondent.

CHRISTIANSON, Ch. J.   This is an appeal from a judgment in favor of the claimant in a proceeding under the Workmen's Compensation Act.   The claimant Matilda E. Desautel was an employee in the State Institution for the Feeble-Minded at Grafton.   On October 22, 1940, she was injured.   Thereafter she presented a claim to the Workmen's Compensation Bureau alleging that her injuries had been sustained in the course of her employment as an employee in the State Institution for the Feeble-Minded.   On December 9, 1940, the Workmen's Compensation Bureau made its order dismissing the claim on the ground that the alleged injury was not sustained in the course of employment.   Thereupon the claimant appealed from the decision of the Workmen's Compensation Bureau to the District Court of Walsh County.   On such appeal the claimant filed a complaint setting forth the facts upon which the claim was based.   The Workmen's Compensation Bureau demurred to such complaint on the ground that it did not state facts sufficient to constitute a cause of action.   The trial court sustained the demurrer and dismissed the proceedings.   Thereupon the claimant Desautel appealed to this court and this court reversed the order of the district court and held that the facts set forth in the complaint showed that the injuries sustained by the plaintiff had been sustained in the course of her employment and that the facts stated in the complaint showed that she had a valid claim and cause of action for the disability resulting from her injuries.   Desautel v. Workmen's Comp. Bureau, 72 ND 35, 4 NW2d 581, 141 ALR 858.

After the case had been remanded to the district court a trial was had at which both parties appeared and were represented by counsel.   The superintendent of the Feeble-Minded

Institution and the claimant Desautel were sworn and testified. There is no substantial dispute or conflict in the evidence and in all material matters the testimony conforms substantially to the allegations of the complaint.

The evidence shows that the claimant Desautel commenced work as an attendant in a ward in the Institution in 1933; that she remained in such employment continuously until the time of her injury on October 22, 1940; that it was her duty to supervise the children in her ward and see that they were properly taken care of; that some of the children under her care were bedridden. Under the terms of her employment she commenced work at 6 A.M. and was required to work until about 7:15 P.M. She was allowed three one-half hour periods for rest and refreshment. One in the morning and one in the afternoon. Between these two she was allowed what is denominated a lunch period of one-half hour. This period was not fixed at a definite time. It varied. One week it might be from 11:30 A.M. to 12. Next week it might be from 12 o'clock noon to 12:30 P.M., or it might be from 12:30 P.M. to 1 P.M. The claimant had no control over these periods. They were fixed by the supervisor, and the claimant was required to conform to the hours so fixed.

The superintendent testified that "because of the proximity of the school to Grafton, because we are in the city limits, a goodly number of the employees prefer to live at their own homes, which is easily understood." He further testified that when employing personnel he asked the question whether the employee wished to live at the institution or "to live out", coupled with the statement "that if you wish to live out we will pay you a certain amount toward your maintenance, if you wish to live in we hire you on a basis of maintenance furnished." He further testified that about forty-two percent. of the employees of the institution were living out. He testified also that no directions were given to the employees "living out," as to where their meals should be taken or what they should eat. He testified also that the employee had nothing to do with the fixing of the time for the rest periods; had nothing to say about the times they should be had, and had no choice but to conform to the

times that were fixed. He said, "It was understood that they have to come at a certain time in the morning and we designate when they come and when they leave and when they go home for meals."

The claimant Desautel was employed on the terms that she would live outside of the institution and not take her meals there. For her work she was paid $41.00 per month and $15 a month for maintenance. On the day the accident occurred the lunch period assigned to the claimant Desautel ran from 12:30 P.M. to 1:00 P.M. In accordance with the established custom she left the institution and walked to her home. After she had left the institutional grounds and was nearing her home she stepped into a depression with the result that she fell and fractured her ankle.

It is admitted that the employment was one covered by the Workmen's Compensation Act and that the claimant is entitled to be compensated for any injury sustained in the course of such employment. There is no dispute as to the fact that plaintiff sustained injury or the extent of such injury or the amount she is entitled to recover if the injury was sustained in the course of employment so as to be compensable under the Workmen's Compensation Act.

The evidence shows that during her employment the claimant Desautel had always gone home for her lunch and that there never had been any objection to this on the part of the superintendent or of anyone who supervised her work. She testified also that she was always required to be back at active work no later than the expiration of the one-half hour period allowed for lunch. The testimony of the superintendent of the institution shows that he was familiar with the location of claimant's home where she went for lunch and there is no claim that she at any time went to any other place for her lunch. It is clear from the evidence that there was a definite established custom through the years for the claimant to take her lunch at home and that the officers of the institution knew, and must have anticipated that there is where she went for her lunch, and that there is where she could be found if it became necessary to contact her because of any emergency. It is said that the one-

half hour lunch period was wholly at plaintiff's disposal for any purpose she might see fit to use it. This ignores certain pertinent facts. According to the superintendent the question of a lunch period entered into, and was discussed at the very inception of, the employment of the various employees in the institution. The claimant was required to go to work at 6 o'clock in the morning and aside from a one-half hour rest period in the morning, she was required to be constantly at her confining work in a ward until the one-half hour period allotted for lunch. That period was denominated the lunch period. She had only one-half hour in which to go to her home, eat her lunch, return to the ward, and take up her work with the children. Necessarily this did not allow for any extended travel. Obviously it was necessary that the claimant make arrangements so that there would be no extended waiting before her lunch was available. There was not even a definite time fixed for the lunch period. The time was under the control of the employer and varied according to the directions given by the supervisor from time to time. Clearly the claimant could not go and shop for lunch at the various restaurants in Grafton or some neighboring town.

In his memorandum decision the trial court said, "No claim is made that her home and surroundings were more dangerous or 'causative' than any other luncheon place that might be available. In fact it was not; it was a nearby place and about the only place available,—out in the country at the edge of the Grafton city limits." It is clear from the evidence that the day the accident happened the claimant was following the same practice and custom she had followed throughout the years,— a practice that officers of the institution must reasonably have anticipated she would follow,—a practice in which they had acquiesced and which they at least impliedly had approved throughout the years. On the day the accident occurred she went to the place that by arrangement mutually satisfactory had become recognized and established as the place she would take her lunch.

What is or is not an incident of employment is dependent not

only on the original agreement or understanding but upon such modifications as may have been made either expressly or impliedly by the parties; acts which at the beginning of an employment may be outside and not an incident of such employment may as a result of the conduct of the parties during the course of the employment become incidents of the employment. Thomas v. Proctor & G. Mfg. Co. 104 Kan 432, 179 P 372, 6 ALR 1145; Wamhoff v. Wagner Electric Corp. 354 Mo 711, 190 SW2d 915, 161 ALR 1454; Employers' Liability Assur. Corp. v. Industrial Acci. Commission, 37 Cal App2d 567, 99 P2d 1089.

At the time of the injury the claimant was doing something reasonably contemplated by the employment, and the dangers attending were incident dangers. The injury occurred "within the period of the employment at a place where the employee may reasonably be expected to be" and while she was engaged in something incident to the employment and contemplated thereby. Desautel v. North Dakota Workmen's Comp. Bureau, 72 ND 35, 37, 4 NW2d 581, 141 ALR 858; Employers' Liability Assur. Corp. v. Industrial Acci. Commission, 37 Cal App2d 567, 99 P2d 1089, supra. See also Vilter Mfg. Co. v. Jahncke, 192 Wis 362, 212 NW 641, 57 ALR 627; Kaletha v. Hall Mercantile Co. 157 Minn 290, 196 NW 261.

The trial court made findings of fact and conclusions of law in favor of the claimant in conformity with the decision of this court on the former appeal. The Workmen's Compensation Bureau has appealed from the judgment of the district court and demands a trial anew in this court.

The sole question presented and determined on the former appeal was whether the facts alleged in the complaint showed that the claimant had sustained an injury in the course of her employment. On this appeal the only question presented is whether the evidence adduced and the inferences reasonably to be drawn therefrom show that the injury sustained by the claimant was incurred in the course of her employment. It is suggested that there is a difference between the facts alleged in the complaint and the facts established upon the trial in that the complaint alleged, "It was further understood and agreed that

she was to travel from her place of employment to her home, eat her lunch, and return to duties in the ward within the half hour allotted for that purpose," and that the evidence does not show that there was a specific agreement that the claimant was to eat her noon meal at her home. It is true the evidence does not show any express agreement that the claimant should eat her lunch at home, but the evidence does show that it was understod that this is what she would do.

The evidence shows that it was her custom to go to her home adjacent to the institutional grounds for her noon meal and there is no claim that at any time during the years she went any other place. The evidence shows that the superintendent of the institution knew this and in referring to the terms of employment in the institution, he said that "a goodly number of the employees preferred to live at their homes." The settled practice throughout the more than seven years of employment known to, and acquiesced in by, the employer certainly established an understanding or agreement between the parties as to what the employee was authorized to do during that period of her working day designated by her supervisor for her lunch period.

As we view the evidence there is no material difference between the facts alleged in the complaint and those established upon the trial. If anything, the facts established upon the trial show more clearly that the injury of the claimant was sustained in the course of her employment than did the allegations of the complaint. The complaint alleged that it was understood and agreed that her lunch period should be from 12:30 to 1:00 P. M., whereas the evidence shows that the employer maintained a much stricter control over this period. There was no definite time fixed for the lunch period. The power to fix the same for any given day or days was retained by the employer and the employee was required to conform to the periods fixed by the supervisor from time to time. As the trial judge stated in his memorandum opinion, after reciting the evidence, "I am therefore faced with the same facts originally pleaded and the identical legal problems." He further said, "No legal mind should in-

dulge in some hair-splitting claim that the complaint and the evidence do not reasonably conform."

It is contended by the dissenting members of this court that the doctrine of the law of the case is not applicable on this appeal. It is true the decision on the former appeal was by a divided court but this did not affect its binding effect. It was nevertheless the decision of the court. In this state, a majority of the Supreme Court form a quorum and have authority to pronounce a decision in any case brought before the court for determination and to determine all questions arising in any such cases with the single exception that the court may not declare any legislative enactment or law of the state to be unconstitutional unless four of the five judges of the court decide. ND Const. § 89. On every other question, a majority of the court have authority to pronounce decision and a decision pronounced by the majority has the same binding effect as though all the members of the court concurred in the decision. The minority have a right to express their dissent but a decision that has been pronounced by a majority of the members of the court (excepting alone a declaration that a statute is unconstitutional) is as binding as if all the members of the court had joined in the decision. Boles v. Hotel Maytag Co. 221 Iowa 211, 265 NW 183.

In support of the contention that there is a variance between the allegations of the complaint (the sufficiency of which was sustained by this court on the former appeal) and the facts proved upon the trial later had in the district court, reference is made to the decision of this court in Pillen v. Workmen's Comp. Bureau, 60 ND 465, 235 NW 354, which decision was distinguished by this court in the decision on the former appeal, and reference is made to certain evidence which it is said may be found in the transcript of the proceedings had upon the trial of the Pillen Case. Obviously, the effect and scope of the decision in any given case as precedent is measured by the terms of the decision itself. Where a rule of law is announced in a decision predicated on facts stated in the decision, such facts and they alone constitute a factual basis for the rule of law announced by the decision.

On the former appeal, counsel for the North Dakota Workmen's Compensation Bureau cited the Pillen Case in support of the contention that plaintiff's injury did not arise in the course of her employment. In considering the effect and scope of that decision, this court considered the rule announced in the Pillen Case and the facts stated in the decision on which the rule was predicated and reached the conclusion that the facts stated in the decision in the Pillen Case distinguished it from the facts stated in the complaint in the instant case.

The rule announced in the Pillen Case is stated thus in the Syllabus: "An employee under contract to work for 60 cents per hour and $2.50 per day for living expenses, who is injured on a public street en route to a hotel to get his lunch during the noon hour, and while riding on a truck by invitation of the truck driver, who also worked for the same employer and where it does not appear that the employer had any control or authority over the public street where the accident happened, the injury was not received in the course of employment even though the route taken was the direct and only route taken by all the employees going to and from the plant where such employee worked."

The decision in the Pillen Case states that Pillen was employed first by the Hughes Electric Company and that he worked for that company about two weeks. 60 ND 467, 235 NW 354. That thereupon he was employed by the Fuel Economy Engineering Company and had been in the employ of that company about a day and a half at the time he was injured. In the decision in the Pillen Case it is said:

"Thomas W. Delaney testified: 'I have charge of the men for the Fuel Economy Engineering Company. I employ them and discharge them. Mathew Pillen was working for the chief engineer of the Hughes Electric Light Company, who told me he wouldn't need Pillen any more on Saturday. So he started to work for me on Sunday morning, the seventh of August, and the accident was reported on the eighth day of August. He worked for me a day and a half. His wages were sixty cents an hour and living expenses, board and room, two dollars and fifty

cents for board and room. There were no arrangements made by the Fuel Economy Engineering Company for the transportation of the employees to and from town. I did not direct the men to travel in any particular manner to and from work.' . . ." 60 ND 467, 235 NW 355.

"There is no evidence that Pillen rode with Johnson after he was employed by the Fuel Economy Engineering Company, except, on the day of the accident, and it appears from the testimony of Johnson, that Pillen had started to walk to the hotel, for Johnson testified:—"I was waiting for Tom Delaney and I hollered to Pillen, 'Dad come back and ride with me.' Delaney was delayed and they started to the hotel without him. . . ." 60 ND 469, 235 NW 356.

"Pillen was paid by the hour, was not under pay at the time of the accident and was not subject to the control of the employer." 60 ND 469, 235 NW 356.

In the decision on the former appeal there was no misconception as to either the rule of law announced in the Pillen Case or as to the facts stated in the opinion on which the rule was predicated. After full consideration we were agreed that the facts in the Pillen Case readily distinguished it from the facts set forth in the complaint in this case. We still adhere to those views. Under well settled rules, generally recognized by the courts of this country and frequently recognized and applied by this court, the decision on the former appeal became and is the law of the case. The facts established upon the trial being in all material respects the same as those alleged in the complaint, the decision on the former appeal is decisive of the question raised on this appeal. Asbury Hospital v. Cass County, 73 ND 469, 16 NW2d 523; Jacobson v. Mutual Ben. Health & Acci Asso. 70 ND 566, 296 NW 545; Pearce v. North Dakota Workmen's Comp. Bureau, 68 ND 318, 279 NW 601; Anderson v. Northern & D. Trust Co. 67 ND 458, 484, 485, 274 NW 127, 140; Wittmayer v. Security State Bank, 57 ND 934, 224 NW 303; Dubs v. Northern P. R. Co. 51 ND 113, 199 NW 191; State Bank v. Sukut, 50 ND 397, 196 NW 100; Booren v. McWilliams, 34 ND 74, 157 NW 698; Schmidt v. Beiseker, 19

ND 35, 120 NW 1096; 5 CJS, Appeal & Error, § 1821, pp 1267 et seq.; 21 CJS, Courts, § 195, pp 338, 339; Beers v. Atlas Assur. Co. 219 Wis 472, 263 NW 81; State ex rel. Littig v. Superior Ct. 231 Wis 58, 285 NW 419; Fauerbach v. Dane County, 238 Wis 156, 298 NW 616; State ex rel. Lisbon Town F. Ins. Co. v. Crosby, 240 Wis 157, 2 NW2d 700; Milwaukee v. Heyer, 241 Wis 56, 4 NW2d 126; McKlveen v. Townley, 233 Iowa 328, 7 NW2d 186; Machenheimer v. Falknor, 151 Wash 447, 276 P 297, 298; Chicago M. & St. P. R. Co. v. Snyder, 27 Ill App 476. See also authorities cited and digested in "Law of the Case," 24 Words & Phrases, Permanent ed at pp 409-418.

The judgment appealed from is affirmed.

MORRIS and BURR, JJ., concur.

BURKE, J. (dissenting). I do not believe the rule of "the law of the case" is properly applicable here. There is a substantial variance between the allegations of the complaint as interpreted by the majority of this court upon the former appeal and the facts proved at the trial. Upon the former appeal the majority of the court agreed that the complaint alleged that the plaintiff, under her contract of employment, remained under the control of her employer during her lunch period. In that decision it is said, "It is also alleged that lunch was to be taken from 12:30 to 1:00 P.M. at the employee's home across the highway from the premises belonging to the institution." In distinguishing this case from the case of Pillen v. Workmen's Comp. Bureau, 60 ND 465, 235 NW 354, the court said: (72 ND 35, 39, 4 NW2d 581, 141 ALR 858),

"Dissimilarity appears from the disclosure in the Pillen Case that the employee was working for 60¢ an hour and $2.50 to cover room and board. It does not appear that the employee was required to work between certain hours each day or to take his meals at a certain place. Neither does it appear that the length of time was fixed during which the noon meal was to be obtained although it is referred to in the opinion as the noon hour. In the case before us the employee was not working

by the hour but by the day. The contract of employment as pleaded discloses a definite time for the work day to begin and to end. It specifies two half-hour rest periods and a half-hour lunch period. It also provides the specific place at which the noon meal is to be taken."

The decision in the Pillen Case (ND) supra, states that Pillen was paid sixty cents an hour and allowed two dollars and fifty cents a day board and room. The record in the case also shows that he worked, as a part of a construction crew, ten hours a day, six days a week, for at one place in the transcript his pay rate is referred to as six dollars a day and at another as thirty-six dollars a week, and the judgment appealed from in that case decreed that his wages amounted to $36.00 a week. In the circumstances it clearly appears that his hours of employment, and the time and duration of his lunch period were fixed by his employer. The allowance of two dollars and fifty cents a day for board implies a work day of fixed hours. It seems to me therefore that the principal basis of the distinction was that the contract of employment, alleged in this case, provided the specific place at which the noon meal was to be taken.

At the trial of the case this allegation was not sustained by the proof. The record shows the following:

"The Court: Does the institution through any of its officers or employees in any way supervise or direct the activities of an employee while he or she may be absent during the half hour for instance for lunch?

A. (Dr. Lamont) No, we have nothing to say about their activities; they can go off the grounds and they can go where they please. . . .

The Court: They are at liberty to use that time any way they like?

A. Yes, any way they want."

In his comment upon the proof, the trial judge said: "she was given a luncheon hour, or lunch period of thirty minutes from twelve-thirty to one o'clock; that during that time she was at liberty to go where she pleased and do whatever she pleased,

she could go any place she liked to get her lunch or she might go without lunch if she saw fit."

I am satisfied that the proof adduced at the trial eliminates all grounds for distinguishing the instant case from the Pillen Case. Upon that ground and upon the grounds stated in the dissent upon the first appeal of this case I think the judgment of the district court should be reversed.

NUESSLE, J. (dissenting). I am unable to concur in the foregoing opinion. The facts established on the trial of the case only confirm me in the opinion expressed in my dissent when the case was here on appeal from an order sustaining a demurrer to plaintiff's complaint upon the ground that it did not state facts sufficient to constitute a cause of action. See 72 ND 35, 4 NW2d 581, 141 ALR 858. Nor can I agree that under the circumstances here shown the doctrine of "the law of the case" requires me to approve a pronouncement which I do not believe to be correct. See Hastings v. Foxworthy, 45 Neb 676, 63 NW 955, 34 LRA 321; M. E. Smith & Co. v. Kimble, 38 SD 511, 162 NW 162; McGovern v. Kraus, 200 Wis 64, 227 NW 300, 16 Am Bankr NS 737, 67 ALR 1381.