[Civ. No. 22378.  Second Dist., Div. Two.  Aug. 14, 1957.]

CITY OF GLENDALE, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and HARRY ENOCHS, Respondents.

Henry McClernan, City Attorney, John H. Lauten, Assistant City Attorney, Walter W. Charamza and Joseph W. Rainville, Deputy City Attorneys, for Petitioner.

Everett A. Corten, Edward A. Sarkisian, Hays & McLaughlin and William T. Hays for Respondents.

FOX, Acting P. J.—Harry Enochs entered the employ of the city of Glendale as a fireman in 1924. He continued with the department, rising to the rank of captain, until February, 1955, when it became necessary for him to give up his work because of a heart attack. It is not disputed that he had been afflicted with coronary arteriosclerosis for many years and that such disease was nonoccupational. Mr. Enochs first experienced heart distress on July 6, 1954, while pushing an automobile from a driveway at a fire. Thereafter, until the termination of his employment, he experienced a "tight feeling in the heart area" every time he responded to a fire alarm. Upon some occasions the pains in his chest were severe. At approximately midnight on February 16, 1955, while at home in bed, Mr. Enochs suffered a heart attack. He had returned home from work at 8 o'clock that morning. The last fire he had attended was on January 22, 1955, which required him to be away from the fire station 13 minutes. The last incident in his duties requiring any particular exertion was on February 11, when he participated in a routine fire drill. Between February 11 and February 16 Enochs reported for duty on his regular shifts but spent most of his time between shifts at home lying down resting. The commission found he suffered injury arising out of and in the course of his employment consisting of myocardial infarctions and heart strain. In relating these heart conditions to each other, the

respondent commission determined that Mr. Enochs sustained compensable injury "consisting of myocardial infarctions and heart strain which were superimposed upon a non-industrial and non-disabling, pre-existing coronary arteriosclerosis." It also found that his disability was total and permanent. The commission concluded: "There is no basis for an apportionment of the permanent disability between the effects of injury and pre-existing disease." As a consequence of this conclusion the respondent commission made a maximum compensation award in favor of Mr. Enochs and against the city, which acted as its own insurance carrier.

The city seeks to have this award annulled on the ground that under the law and the facts of this case the disability should have been apportioned between the preexisting disease and the industrial injury. We have concluded that the position of the city is sound.

Section 4663 of the Labor Code provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury."

■ Pertinent to the instant case are the observations of the court in *Bowler* v. *Industrial Acc. Com.*, 135 Cal.App.2d 534 at page 539 [287 P.2d 562] : "If the resultant disability is due entirely to the lighting up or aggravation of the pre-existing condition by the industrial injury, the employer is required to compensate for the entire disability and there can be no prorating the extent of the disability due to the accident itself on the one hand and that due to the aggravation caused by the employee's physical condition. [Citation.] However, if the resultant disability is partly due to an industrial disability growing out of the injury, including the aggravation or 'lighting up' of the preexisting dormant condition, and in part, of what may be termed a nonindustrial disability resulting from the normal progress of the preexisting disease or condition, then the commission must apportion the percentage of the disability due to the injury and the percentage due to the continuance of the disease apart from the injury. [Citations.]"

Four doctors submitted extensive reports to the commission, three of whom also testified before it. Dr. Goldfarb, the applicant's doctor, testified that the applicant's disability was attributable both to the "natural progression of his coronary artery disease" and the stress occasioned by his occupational

duties. It was Dr. Goldfarb's opinion that 80 per cent of the applicant's disability was due to his occupational injury and 20 per cent to his nonoccupational underlying heart disease. It was the opinion of Dr. LaJoie that the applicant's disability was entirely ''due to natural cause and . . . was not organically aggravated by his occupation.'' Dr. Dimitroff was of the opinion that the initial cause of the applicant's disability was nonoccupational. He concluded that ''the non-occupational contribution to the present disability is from 66 to 75%.'' Dr. Askey also was of the opinion that the applicant's disability was due both to the underlying disease and to the strain caused by his work. However, it was his view that it would be impossible to apportion the disability on a percentage basis because it would be too speculative.

■ From the foregoing it is clear that all the medical experts agreed that some portion of the applicant's disability was due to his nonoccupational heart ailment. Under such circumstances the Labor Code, section 4663, requires that an apportionment of disability be made between the occupational and nonoccupational causes. That such is possible in this case is shown by the evidence submitted by Drs. Goldfarb and Dimitroff. Only Dr. Askey expressed the view that an apportionment could not be made because of its speculative nature. This is simply saying that apportionment would be difficult. Admittedly it would be difficult because there is no formula or principle by which it may be precisely determined. It is a matter of judgment. It may well be that Dr. Askey felt that his training and experience did not adequately equip him to make such an allocation. The other doctors felt differently. The difficulty of making an apportionment does not relieve the commission of the duty imposed on it by statute. Making an apportionment here is no more speculative or difficult than determining the extent and duration of a physical injury and awarding compensation therefor. ''It is a thing that courts and juries do every day in personal injury actions. . . . The commission and its referees should be deemed no less competent to perform this task than is the ordinary jury.'' (*Dahlbeck* v. *Industrial Acc. Com.*, 135 Cal.App.2d 394, 401 [287 P.2d 353].)

To require the employer to assume the entire financial burden of the applicant's disability simply because it is difficult to make an apportionment between the occupational and nonoccupational causes would not only be contrary to the

mandate of the Legislature but also unfair and inequitable to the employer. In light of the other evidence before the commission, it is apparent that the opinion of Dr. Askey does not justify the commission's conclusion that there was no basis for apportionment in this case.

The award is annulled and the case is remanded to respondent commission with directions to determine the percentage of the applicant's disability attributable to his industrial injury and to make a new award based thereon.

Ashburn, J., and Richards, J. pro tem.,* concurred.

A petition for a rehearing was denied September 11, 1957, and respondents' petitions for a hearing by the Supreme Court were denied October 8, 1957. Carter, J., was of the opinion that the petitions should be granted.

*Assigned by Chairman of Judicial Council.