SOUTHEASTERN CONSTRUCTION COMPANY, et al. *v.*
DEPENDENT OF DODSON

No. 42670 May 20, 1963 153 So. 2d 276

*Bob Ray,* Jackson, for appellant.

*J. A. Travis, Jr.,* Jackson, for appellee.

ETHRIDGE, J.

This case involves the extent of an administrative agency's discretion in determining the apportionment of compensation death benefits, between that due to the injury and that due to a preexisting symptomatic coronary artery disease; the constitutional validity of the statute; and the proper formula for apportionment. The claim for workmen's compensation was filed by appellee, the widow of S. W. Dodson. Dodson worked for Southeastern Construction Company, appellant, at the time of his death.

The statute involved is the second paragraph of section 4 of the Mississippi Workmen's Compensation Law. Miss. Laws 1960, ch. 277; Miss. Code 1942, Rec., sec. 6998-04. It provides:

"Where a pre-existing physical handicap, disease or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph, would be payable shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury."

The attorney referee awarded to the widow full death benefits. He said there was no acceptable evidence upon which to base an apportionment of compensation as to any preexisting disease. The commission apportioned by allocating to preexisting disease a contribution of 25 percent to production of the result of the injury. The circuit court reversed the commission, and held there was no substantial evidence that Dodson suffered a prior existing disability in the amount of 25 percent. It awarded full death benefits to Mrs. Dodson. After careful consideration of the evidence, we conclude the circuit court should be reversed, and the commission's order affirmed.

On May 16, 1961, the day before his death, Dodson went to work for Southeastern as a steel worker on a heavy construction job, the erection of an annex to a bank. The next morning he began at seven o'clock, doing the same type of work. It consisted of moving and setting in place rolls of steel wire mesh, 5 feet wide, 150 feet in length, and weighing about 200 pounds each. Dodson and his helper climbed or walked up to the sixth floor, and began working with the wire which they rolled about 200 feet across the floor, and started setting it in place. While bending over and doing this fairly hard physical labor, Dodson, in the process of unrolling a new package of this material, fell dead.

Before his death, his wife said he had not suffered any serious disease or injuries, and she considered his health to be good. On several occasions he had visited doctors for colds, shortness of breath, and asthma, but there was no record of treatment for any heart condition. However, on different occasions and for some time he had complained to his wife about indigestion, and pains in his left arm, after he returned from work. He attributed the condition in his upper stomach to indigestion, and frequently used baking soda. At times during the night he would awake, stating he felt as though he were smothering. On the evening before his death, Dodson told his wife that he had a bad case of indigestion. His left arm hurt him, and he did not want any supper. Yet he slept well, and the next morning appeared to be feeling all right.

Three cardiac specialists testified, on hypothetical questions. They all agreed Dodson's death was work-connected, that his labor on that occasion precipitated, aggravated, and contributed to his heart attack, which resulted in death. The commission so found. Hence there was causal connection between the work and death.

The specific issue is whether the medical testimony justified the commission in apportioning 25 percent of

the compensation benefits to Dodson's preexisting heart disease. Dr. J. P. Melvin, Jr. was of the opinion that he had a symptomatic coronary artery disease, which played "a significant part in producing the man's death." However, he could not "quantitate the amount of predisposition that this coronary atherosclerosis had in producing his final illness." His "educated guess would be that it did not contribute more than 25 percent." The 25 percent would be a "possibility," but there was nothing in the field of medical research or knowledge which would give him anything specific on making such apportionment.

Dr. T. D. Labecki thought that Dodson had a preexisting asymptomatic coronary atherosclerosis, or "very mild symptomatic." It contributed to his death, when coupled with the heavy manual labor. However, this "coexisting factor" would be "entirely impossible" to reduce to "figures, percentages." Apportionment of contribution by the preexisting condition could not be ascertained "because it can not be determined by any one."

Dr. A. G. Ward was also of the opinion that Dodson had a preexisting coronary artery disease. If he had been his patient, he would have considered him totally disabled. The work aggravated his condition. However, he was not able "to see how anybody could answer" the percentage contribution of the preexisting condition to Dodson's death. It would be an impossible proposition to apportion the percentage of contribution from the preexisting condition.

I.

The required standards for apportionment were outlined in Cuevas v. Sutter Well Works, 150 So. 2d 524 (Miss. 1963), in this way:

"Under this provision the burden of proof is upon the employer and insurance carrier to establish by a preponderance of the evidence all of the factors stated

in the second paragraph of Sec. 4, in order for compensation to be proportionately reduced. These factors are (1) that there must be a pre-existing physical handicap, disease or lesion, (2) this pre-existing condition must be shown by medical findings (3) to be a material contributing factor in the results following injury, and (4) the compensation otherwise payable is reduced by that proportion which the pre-existing condition contributed to the production of the results following the injury. There must be substantial evidence to support the Commission's findings on all of these factors. . . . The amendment to Sec. 4 should be construed in a fair manner, equitably and justly.''

The evidence showed, by medical findings, that Dodson had a preexisting, symptomatic coronary artery disease. All three of the doctors who testified agreed upon this. The detailed testimony of the widow as to his symptoms and complaints supports their conclusions. The evidence also reflected, and the commission found, that this preexisting disease was a ''material contributing factor in the results following injury.'' Hence all of the statutory requisites for apportionment of compensation were shown by the evidence and found by the commission to exist.

Although the medical witnesses agreed that the pre-existing disease contributed materially to Dodson's death, they also candidly said that no scientifically objective apportionment of the causes of death could be allocated to the preexisting disease, in terms of percentage. Dr. Melvin stated his ''educated guess'' would be that it contributed no more than 25 percent. The commission, as the trier of facts, had before it the testimony of Mrs. Dodson, and the informed opinions of three specialists, who said that Dodson's preexisting disease was a material contributing factor to his death, although they could not name the exact amount of contribution. The statute places on the commission the

duty to evaluate these and other facts and inferences from the facts. Under all of the circumstances, we think the commission was authorized, in its sound discretion, to allocate 25 percent of contribution by the preexisting disease.

Several states other than Mississippi have workmen's compensation apportionment statutes. They are California, Kentucky, North Dakota, Maryland, Idaho, Florida and Indiana. Comment, 30 Miss. L. J. 312 (1959); 6 Schneider, Workmen's Compensation Law (3d ed. 1948), p. 73; 2 Larson, Workmen's Compensation Law (1961), sec. 59.20, p. 56, fn. 76; Dunn, Miss. Workmen's Compensation Law and Practice (1957), sec. 94.5 (supp.).

The first apportionment law was enacted in this state in 1958. Miss. Laws 1958, ch. 454, sec. 1. Its coverage of preexisting conditions was limited to apportionment only if the employer had required a pre-employment physical examination, and that examination disclosed a preexisting permanent physical impairment. See Comment, 30 Miss. L. J. 312 (1959). There are no judicial decisions under the 1958 statute. The present method of apportionment was defined in 1960. Miss. Laws 1960, ch. 277.

In the instant case, all conditions precedent to a required apportionment are present. The difficult problem is determining what portion of Dodson's injury and resulting death was caused by his coronary artery disease. This involves the degree of apportionment.

Dunn (section 94.7) makes this comment, after an examination of related cases from other states:

"Once these conditions are shown, the next question for decision is one of degree. This, of course, is a question of fact which will not ordinarily be susceptible of exact proof or of determination with mathematical accuracy and which must be left largely, if not entirely, to the discretionary estimate of the Commission, much as the degree of contributory negligence is left to the

discretion of a jury in tort cases at common law. Unless the decision of this issue involves a clear abuse of discretion or manifest error on the basis of clear affirmative evidence leading to a different result, the decision of the Commission will prevail.''

In Tanenbaum v. Industrial Accident Commission, 4 Cal. 2d 615, 52 P. 2d 215 (1935), claimant had a preexisting although latent arthritic tendency. While working, she struck the tip of her right shoulder against the corner of a fruit stand. The commission apportioned one-third to the preexisting disease and two-thirds to the industrial injury. This was affirmed. Apparently no medical testimony suggested a particular percentage of contribution, but one witness stated that the injury should have passed away in a month or two in the absence of the preexisting disease. The court said:

''It is apparent that the apportionment here made is even more favorable to petitioner than is warranted by the medical report first above quoted. However, it is settled that the determination of the percentage of disability is a matter left to the sound discretion of the commission.''

Frankfort General Ins. Co. v. Pillsbury, 173 Cal. 56, 159 P. 150 (1916), involved the extent of disability to a carpenter who had injured a finger and part of his hand. Affirming a finding of 20¼ percent permanent disability, it was said:

''The extent of disability occasioned by an injury is not capable of exact measurement. The percentage of such disability is a matter to be determined by the Commission in the exercise of its sound discretion, based upon a fair view of all of the circumstances. Its conclusion on this matter is the determination of a question of fact, and is not subject to review by the courts unless palpably contrary to the undisputed evidence. We cannot say that the finding that Immel's injury caused a permanent disability of 20¼ per cent. is contrary to the evidence.'' Hines v. Ind. Acc. Comm., 215 Cal. 177,

8 P. 2d 1021, 1026 (1932); see Ind. Ind. Co. v. Ind. Acc. Comm., 95 Cal. App. 2d 443, 213 P. 2d 11 (1949).

Liberty Mutual Insurance Company v. Industrial Accident Commission, 33 Cal. 2d 89, 199 P. 2d 302 (1948), dealt with the question in this way:

"Arriving at a decision on the exact degree of disability is a difficult task under the most favorable circumstances. It necessarily involves some measure of conjecture and compromise by the finder of fact as certainly would occur in the mental processes of a so-called expert witness. When the commission is confronted with widely divergent views as to the extent of the loss of function of the body, further complicated by the possibility of lack of cooperation or faking in various degrees by the injured person, it may make a determination within the range of the evidence as to the degree of disability. . . . The trier of fact may accept the evidence of any one expert or choose a figure between them based on all of the evidence."

In De La Nova v. Industrial Accident Commission, 137 Cal. App. 2d 516, 290 P. 2d 377 (1956), these earlier cases were followed. Claimant's disability was attributable in part to a head and neck injury, and in part to the normal progress of a preexisting posture condition. The commission apportioned 15 percent to the injury and 85 percent to the preexisting condition. There was some medical testimony as to percentage estimates. Petitioner argued that there was no substantial evidence to justify the doctor's apportionment of 15 percent in his testimony, because he could not give any basis for his opinion. The particular medical doctor said there was no objective rule by which his opinion could be tested, that it was "a matter of trying to evaluate the whole picture and striking a fair, arbitrary apportionment."

City of Glendale v. Industrial Accident Commission, 153 Cal. App. 2d 213, 314 P. 2d 182 (1957), dealt with

an issue somewhat similar to the present one. Enochs, an employee of the fire department, had been afflicted with coronary arteriosclerosis for many years. He first experienced heart distress in 1954, and, until termination of his employment, he experienced a "tight feeling in the heart area" every time he responded to a fire alarm. He had at various times severe pains in the chest. He suffered a heart attack. Four doctors testified. One thought that 80 percent of applicant's disability was due to the work, 20 percent to the heart disease. One attributed all of the disability to the disease. Another attributed 66-75 percent to the preexisting disease. Dr. Askey was of the opinion applicant's disability was due both to the underlying disease and the strain caused by his work, but "it was his view that it would be impossible to apportion the disability on a percentage basis, because it would be too speculative." The commission found that applicant's injury arose out of and in the course of his employment, but held there was no basis for an apportionment of the permanent disability between the effects of injury and preexisting disease. It therefore awarded full disability benefits to applicant.

On appeal, this order was reversed. The court said that all the medical experts agreed that some portion of applicant's disability was due to his preexisting disease. Hence the statute required that an apportionment be made. Two doctors thought it could be done. Only Dr. Askey indicated otherwise, and as to his testimony the court said:

"This is simply saying that apportionment would be difficult. Admittedly it would be difficult because there is no formula or principle by which it may be precisely determined. It is a matter of judgment. It may well be that Dr. Askey felt that his training and experience did not adequately equip him to make such an allocation. The other doctors felt differently. The difficulty of

making an opportionment does not relieve the commission of the duty imposed on it by statute. Making an apportionment here is no more speculative or difficult than determining the extent and duration of a physical injury and awarding compensation therefor. 'It is a thing that courts and juries do every day in personal injury actions. . . . The commission and its referees should be deemed no less competent to perform this task than is the ordinary jury.' Dahlbeck v. Industrial Acc. Comm., 135 Cal. App. 2d 394, 401, 287 P. 2d 353, 357.

"To require the employer to assume the entire financial burden of the applicant's disability simply because it is difficult to make an apportionment between the occupational and non-occupational causes would not only be contrary to the mandate of the Legislature but also unfair and inequitable to the employer."

Harris v. Bechtel Corp., 74 Idaho 308, 261 P. 2d 818 (1953), dealt with the Idaho apportionment act. Cole v. Fruitland Canning Co., 64 Idaho 505, 134 P. 2d 603 (1943). Claimant had a back injury. He previously suffered herniated spinal discs, and had prior treatment at a hospital, in the course of which some residual oil was left in the spinal column. As a result, he developed several ailments. The board made certain apportionments of compensation. Affirming the order, the court said:

"We do not infer that all of the medical expense consequent upon such a chain of circumstances should be apportioned to the accidental injury and none to the preexisting infirmity. However, scientific and mathematical certainty and accuracy in apportioning the degree or duration of the disability to the various contributing factors in such cases is impossible. Consequently the board must be allowed a degree of latitude in making the apportionment. Balancing all of the variout items and elements involved in the apportionment

here made, we cannot say that the action of the board is not supported by substantial, competent evidence."

The Kentucky act was applied in American Rolling Mill Co. v. Stevens, 290 Ky. 16, 160 S.W. 2d 355 (1941). Claimant suffered an injury to his back, and the board attributed 25 percent of his disability to a preexisting disease, 75 percent to the work-connected injury. Affirming the award, apportionment was held to be proper:

"Complaint is made by the Company that there was no testimony showing just how much of the disability resulted from the accident and how much resulted from the arthritis. That is true, and it would be difficult to obtain proof which with certainty would say just how much of this disability was attributable to the accident and how much to the disease. However, Hon. W. J. Fields, who wrote a full and excellently considered opinion for the Board, gave as the reason for the Board so dividing the disability that the plaintiff had performed satisfactory services for the Company for more than twelve years with loss of but little time due to his arthritic condition, and with such a background it was reasonable to conclude that 75% of his disability resulted from the accident. The Board may consider not only the letter of the testimony, but all circumstances and reasonable inferences deducible therefrom. . . . Under this record the Board was justified in making the division it did of plaintiff's disability." Bethlehem Steel Co. v. Munday, 212 Md. 214, 129 A. 2d 162 (1957). See also B. F. Avery & Sons v. Carter, 205 Ky. 548, 266 S. W. 50 (1924); Grimes v. Goodlett & Adams (Ky. 1961), 345 S. W. 2d 47.

Florida has a limited type of apportionment. Florida S. A., sec. 440.02 (19). In United Electric Co. v. Myers, 134 So. 2d 7 (Fla. 1961), the worker died as a combined result of his labor and a dormant brain tumor. The court held that the statute required apportionment where

aggravation of the preexisting condition caused acceleration of death. It further said:

"Admittedly under the evidence found in this case it may be difficult to determine to what extent death was accelerated by the injury. Nevertheless, it must be done and it must be done by the deputy on evidence presented to him at a hearing. This cause must be remanded for that purpose."

## II.

In many instances apportionment of benefits according to the contribution of the preexisting disease may be difficult. See 2 Larson, Workmen's Compensation Law, (1961), sec. 5920; 4 Schneider, Workmen's Compensation Law (3d ed. 1945), pp. 488, 515; 99 C.J.S., Workmen's Compensation, sec. 321, p. 1159; 58 Am. Jur., Workmen's Compensation, sec. 247, p. 751; Dunn, sec. 94.7. The right to workmen's compensation is a statutory privilege. The legislature expressly provided in section 4 that, where a preexisting disease is shown by medical findings to be a material contributing factor in the results following injury, the compensation shall be apportioned. ▆▆ ▆ All conditions precedent to apportionment exist here. Moreover, the degree of contribution is not often susceptible of exact proof, with mathematical accuracy. ▆▆▆ The commission has a reasonable discretion in apportioning the contribution of the preexisting condition. That percentage is a matter left largely to the sound discretion of the commission, to be exercised in view of all the circumstances, and upon a fair view of all of the facts. ▆▆ ▆ Its conclusion on the degree of contribution is a determination of a question of fact, and will not be changed unless it is not supported by substantial evidence, or is manifestly wrong. ▆▆ ▆ Under all of the circumstances in the instant case, the commission was warranted in holding that Dodson's preexisting disease contributed 25 percent to

production of the result of the injury. Fed. Compress and Warehouse Co. v. Dependent of Clark, No. 42,676, decided May 13, 1963.

Further, to hold that the commission's order is based on speculation and conjecture alone is to disregard the undisputed fact that Dodson had a preexisting coronary artery disease, which materially contributed to his death. To say that, since no expert would testify as to a specific percentage, the commission could not make its own reasonable estimate, would be usurping the commission's function as the trier of facts, although the circumstances warranted an inference of the named percentage. It would frustrate the plain legislative intent in passing the 1960 apportionment act.

There is some analogy to the Mississippi comparative negligence statute. Miss. Code 1942, Rec., sec. 1454. It provides that in actions brought for personal injuries the fact that the person injured may have been guilty of contributory negligence shall not bar a recovery, "but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured. . . ." Apportionment of negligence by the jury in tort actions, and apportionment by the commission of the contribution to injury of a workmen's preexisting disease, are not dissimilar. The right to apportion the damages under the comparative negligence act is for the jury, in the light of the circumstances and reasonable bounds. Vaughan v. Bollis, 221 Miss. 589, 595, 73 So. 2d 160 (1954); Natchez & S. R. Co. v. Crawford, 99 Miss. 697, 55 So. 596 (1911).

Under the workmen's compensation act, the commission necessarily exercises considerable discretion in determining the wage earning capacity of an injured claimant. Port Gibson Veneer & Box Co. v. Brown, 226 Miss. 127, 83 So. 2d 757 (1955); Dunn, sec. 34.

Mississippi Code 1942, Rec., section 6998-09(c)(21) provides that in all other cases of disability compensa-

tion shall be 66 2/3 percent of the difference between claimant's average weekly wages, and his wage-earning capacity thereafter in the same employment or otherwise. Obviously loss in wage-earning capacity is not subject to mathematical certainty. Many factors may be involved. There is no statutory guide. It involves a reasonable exercise of the commission's discretion in determining loss in wage earning capacity, but subject to a careful survey of its decision by the court. Dunn, sec. 34.

Illustrative of this principle is Russell v. S. E. Utilities Service Co., 230 Miss. 273, 282, 92 So. 2d 544 (1957), where the commission found the employee suffered a 50 percent loss of wage earning capacity. Affirming that order and contrasting it with a determination of average weekly wages, it was said:

"Earning capacity is a more theoretical concept. The test is one of capacity. The tier of fact, the Commission, must make the best possible estimate of future impairment of earnings, on the strength of both actual post-injury earnings and any other evidence of probative value on the issue of earning capacity. This is essentially a question of fact for the Commission." See also Grubbs v. Revell Furniture Co., Inc., 234 Miss. 319, 106 So. 2d 390 (1958) (17 percent loss in wage earning capacity).

In Pearl River Hampers, Inc. v. Castilow, 234 Miss. 768, 108 So. 2d 200 (1959), an award of 60 percent loss of use of a hand was affirmed. The physician's opinion as to this percentage "was a mere estimate," but, when considered along with other testimony, the agency was justified in its finding.

Somewhat analogous also are those statutes from other states providing for apportionment of compensation among prior employers whose jobs have contributed to an occupational disease claim. The formula or standard for apportionment is usually "determined on general

equitable principles by the court handling the apportionment." 2 Larson, sec. 95.32; Colonial Ins. Co. v. Industrial Acc. Comm., 29 Cal. 2d 79, 172 P. 2d 884 (1946).

In the instant case, all statutory requirements for apportionment are present. Inability to show with mathematical accuracy the degree of contribution of the preexisting disease does not erase the statute. Admittedly cardiac cases constitute a peculiarly difficult problem in compensation law. McNiece, Heart Disease and the Law (1961), pp. 57 *et seq.* The commission should have before it the best evidence available for explaining and describing the facts relevant to apportionment under section 4. The agency may then make an informed judgment in its sound discretion based upon all the circumstances and with reasonable support in the evidence and permissible inferences from it.

### III.

Appellee contends that section 4 is unconstitutional, on the theory it is based upon an unreasonable and arbitrary classification; that it provides for apportionment as to both dormant and active preexisting conditions, with no distinction between them; and that it creates a separate class of employees with lesser rights than the other class, even though a member of the more limited group (such as Dodson) may have had the same earning capacity as other employees without the preexisting disease. Since this case involves an active preexisting disease, we do not consider or decide any question with reference to a dormant preexisting condition.

The property and fairness of this legislation is not a judicial question. The legislature may make a classification based upon some reasonable basis in fact. A law is uniform if it operates equally on every person who is brought within a valid classification. A state may classify persons and objects for the purpose

of legislation. In fact, all legislation involves classification to some extent.

Accordingly, a provision excluding employees of persons having in service less than eight workmen is proper, not arbitrary, and does not deny equal protection of the law to persons affected by it. Walters v. Blackledge, 220 Miss. 485, 513, 71 So. 2d 433 (1954). The workmen's compensation law is a valid exercise of the police power of the state. Walters v. Blackledge, 220 Miss. at 513. Section 4, apportioning compensation to employees with preexisting diseases, which materially contribute to the result following an industrial injury, is not unreasonable. Apparently the legislature thought that a current employer should not bear the compensation burden attributable to a preexisting disease of an employee not caused by the employment. █ The classification has a reasonable basis and is constitutionally valid. The legislature has the duty to determine an acceptable balance of community interests.

IV.

 █ Appellee also attacks the formula used by the commission in computing the compensation payable to her. Dodson's average weekly wage was $124. The agency's order stated that, except for section 4, the dependent would be entitled to a weekly compensation of $35 for 450 weeks, or until $12,500 in compensation had been paid, whichever occurred first. "However, in keeping with the spirit and intent of the 2nd paragraph of section 4, the compensation is reduced by 25 percent." Hence it ordered that defendants pay to Mrs. Dodson compensation (death benefits) "at the rate of $27.25 (sic) per week until $9,375 in compensation benefits have been paid."

In short, the commission followed this method of computation: The total weekly compensation benefits in death cases shall not exceed $35, for a longer period

than 450 weeks, or a greater amount than $12,500. Miss. Code 1942, Rec., sec. 6998-13(f). Deducting 25 percent (8.75) from the weekly maximum of $35 results in weekly benefits of $26.25. (The commission's order erroneously computed this at $27.25). As to the maximum aggregate benefits, 25 percent of $12,500, apportionable to preexisting disease, is $3,125. Deducting that from the maximum otherwise payable leaves maximum apportionable benefits of $9,375. The commission applied apportionment to the maximum compensation which appellee would have received in the absence of section 4.

Appellee contends the following method of computation should have been followed:

1. 35% x $124.00 = $42.40 (the compensation rate)
2. 25% x $42.40 = $10.60 (the contribution of the pre-existing condition to be apportioned from the compensation rate)
3. $42.40 — $10.60 = $31.80 (weekly compensation death benefits payable to appellee)

Section 9(c) of the act provides that, if there is a surviving wife and no child of the deceased, such wife shall receive 35 percent of the "average wages of the deceased." However, the same section 9, subsection (f) states that the total weekly compensation payments to all beneficiaries in death cases shall not exceed $35, and shall in no case be paid for longer than 450 weeks, or a greater amount than $12,500. These two provisions must be read in pari materia.

▇▇ ▇▇ If there were no apportionment for preexisting disease, the widow would receive compensation of $35 per week, for 450 weeks, or not more than $12,500. Section 4 then comes into effect. It states: ". . . the compensation, which, but for this paragraph, would be payable, shall be reduced by that proportion which such pre-existing physical handicap, disease or lesion contributed to the production of the results following the injury." The compensation otherwise payable would be

a maximum of $35 per week, not to exceed $12,500. Under section 4 that compensation "shall be reduced by that proportion" of contribution by the preexisting disease, 25 percent. Hence the commission correctly applied the 25 percent apportionment to $35 per week and the maximum of $12,500. It used the proper formula in accord with the terms of section 4. Since minimum benefits are not involved, the effect, if any, of that statute on the apportionment act is not considered or decided. Code sec. 6998-07.

The commission's order contains a clerical error, having computed 75 percent of $35 per week at "$27.25" per week, instead of the correct sum of $26.25 per week. To that extent its order is amended and corrected. In all other respects it is reinstated and affirmed. The judgment of the circuit court is reversed.

Reversed, and order of Workmen's Compensation Commission reinstated and affirmed as amended.

All Justices concur.