Alice G. STOUT, Appellee,

v.

NORTH DAKOTA WORKMEN'S COM-
PENSATION BUREAU, Appellant.

Civ. No. 9314.

Supreme Court of North Dakota.

May 3, 1977.

Richard J. Gross and Lawrence Dopson, Special Asst. Attys. Gen., Workmen's Compensation Bureau, Bismarck, for appellant; argued by Richard J. Gross, Bismarck.

Vaaler, Gillig, Warcup, Woutat & Zimney, Grand Forks, for appellee; argued by Thomas L. Zimney, Grand Forks.

PEDERSON, Justice.

In this appeal we are presented with the issue of the applicability of the North Dakota aggravation statute, § 65–05–15, NDCC, in this workmen's compensation action, which would require payment of only that proportion of death benefits arising from the aggravation of a preexisting coronary disease which resulted in the heart attack and death of Archie A. Stout in the course of his employment. We affirm the decision of the district court of Grand Forks County denying apportionment and awarding the claimant, Alice G. Stout, full benefits under the Act.

For purposes of this appeal, we restate the factual situation as set forth in our previous review of this case in *Stout v. N.D. Workmen's Compensation Bureau*, 236 N.W.2d 889, 890–91 (N.D.1975):

"Alice G. Stout applied for workmen's compensation death benefits for the death of her husband, Archie A. Stout, who died on November 26, 1973. The Workmen's Compensation Bureau denied the claim, she appealed, and the district court reversed the Bureau and entered judgment for her. The Bureau appeals. We affirm.

"Stout was a truck driver. On the date of his death he delivered freight to a grain elevator at Thompson, North Dakota. The freight consisted of an anhydrous ammonia stand which carried two

immovable metal reels intended to hold hoses. Stout and the manager of the elevator slid or skidded the machine off the truck onto a pickup truck. The machine weighed about 150 pounds and the effort involved was not strenuous. Almost immediately, Stout complained of not feeling well and of pain in his arm and chest. He went to the office and sat down. He called his employer in Grand Forks and asked to be picked up and returned home since he was unable to drive the truck. A few minutes later, he was dead. The cause of death was myocardial arrest.

"There was no inkling of heart disease in Stout's prior medical history. In February of 1973, an electrocardiogram was taken and it was normal. In October of 1973, prior to a prostate operation, he had a physical examination and the report shows that his heart tones were regular and of good quality and there was no enlargement or heart murmur. He returned to work on November 12, and his work was uneventful until the day of his death.

"An autopsy was performed. It showed atherosclerotic occlusion of the proximal portion of the right coronary artery and severe pulmonary edema.

"Mr. Stout's physician, who had examined him twice previous to the date of his death, testified that it was his opinion '. . . that Mr. Stout's exertion did precipitate the coronary insufficiency that resulted in acute cardiac failure and pulmonary edema and subsequent death.' He was asked, 'And is it your opinion that the exertion, moving this object, although it may not have been any great exertion, could precipitate the coronary insufficiency?' and he replied, 'It is indeed.' As to causation, he said that the facts speak for themselves: '. . . he was at work, he did exert within a period of a minute or two and he developed a severe illness and died shortly thereafter.' He said that the pulmonary edema could occur within a very short time, and there was no evidence of any prior heart attack.

"The Bureau offered no evidence to contradict that of the plaintiff's physician.

"The Bureau, however, apparently relied on further testimony of the doctor that Stout had preexisting 'bad coronary disease' and that 'He was, you might say, walking a thin line every day maybe for years.' The Bureau apparently concluded that the death was caused by the preexisting heart condition, and not by the exertion, although the Bureau concedes that the evidence shows that the exertion of moving the anhydrous ammonia stand precipitated the death."

The last sentence quoted above, we believe, correctly reflects the Bureau's position at previous stages of this litigation, that the cause of Mr. Stout's death was not work-related and thus death benefits should be denied entirely. In holding that the claimant, Alice G. Stout, was entitled to death benefits, we did not decide the applicability of § 65–05–15, NDCC, the aggravation statute, to this case, since that issue was not presented for our review, although the concurring opinion indicated that that statute should be recognized.

On remand, the Workmen's Compensation Bureau apparently adopted the position in this case that if the claimant is entitled to benefits they should be paid on an arbitrary fifty percent pro rata basis. In so doing, the Bureau apparently applied § 65–05–15, NDCC, as mentioned in the concurring opinion of Justice Sand, without, however, satisfying those basic requirements pointed out in that concurring opinion.

No hearing has been held at which any testimony has been introduced into the record which would permit the application of the provisions of the statute which authorize the proration of benefits when a claim is made under the provisions of the Workmen's Compensation Act.

In holding that Mrs. Stout is entitled to full death benefits in this action, we do not wish to indicate that the aggravation statute would not be applicable in another appropriate case under similar circumstances if the Workmen's Compensation Bureau

had introduced the necessary evidence to support a proration of the benefits.

Section 65–05–15, NDCC, is a legislative directive which permits the Bureau to apportion benefits in a proper case. Section 65–05–15 provides:

"In case of aggravation of an injury or disease existing prior to a compensable injury, compensation, medical, hospital or funeral expenses, or death benefits, shall be allowed by the bureau and paid from the fund only for such proportion of the disability, death benefits, or expense arising from the aggravation of such prior disease or injury as reasonably may be attributable to such compensable injury. But any compensation paid on the basis of aggravation shall not be less than ten dollars per week unless the actual wages of claimant shall be less than ten dollars, in which event the actual wages shall be paid in compensation."

In construing a similar statute in *Tingle v. Board of County Com'rs (Dade Co. Port Auth.)*, 214 So.2d 1, 2 (Fla.1968), the Florida Supreme Court stated:

"We are obviously faced with the necessity (however difficult or impractical it may be) of giving some effect to the statutory provision that *in case of accidental acceleration of pre-existing disease 'only acceleration of death * * * attributable to the accident shall be compensable. * * *'* To hold that every death resulting from accidental acceleration of pre-existing disease is fully compensable is to ignore this language, and results in confining apportionment under this section to death caused independently by the pre-existing disease. Manifestly that is not the intent of this section since (1) such a death could never in the first instance be brought within the act, (2) it would not require the application of an apportionment section, and (3) with reference to the particular terms of Sec. 440.02(19), a death caused independently by disease would not even involve the acceleration of disease by accident. The literal language of this section is a limitation on the ordinary rule under the act by which death causally related to an accident is compensable, and provides, in the case of pre-existing disease, for compensation only for acceleration rather than full death benefits.

"The statute makes no distinction between active and quiescent pre-existing disease, and in view of the undisputed evidence in this case that claimant's pre-existing disease was accelerated by a compensable heart attack which would not otherwise have caused his death, we think it is clear that the law requires that compensation be limited to the extent of acceleration."

On remand in the Florida case, medical testimony was received in a subsequent hearing and it was determined that benefits could be apportioned on a percentage basis, and that award was affirmed in *Tingle v. Dade County Board of County Com'rs*, 245 So.2d 76 (Fla.1971). At oral argument in the instant case, the Bureau argued that medical testimony was difficult to obtain in these cases for apportionment purposes, and thus the Bureau had adopted the practice of awarding benefits on a fifty percent basis in all such cases. We do not approve of this practice of arbitrarily selecting an apportionment figure of fifty percent in heart attack cases. As Justice Sand said in his concurrence in the first *Stout* decision:

"The extent of the aggravation is basically a medical fact question to be resolved by the agency under appropriate rules of law. Even though it may be difficult in some instances to determine with exact precision the extent of the aggravation and the resulting proportionate benefits, nevertheless the statute contemplates that a reasonable effort be made." 236 N.W.2d at 895.

The California court, in *City of Glendale v. Industrial Accident Commission*, 153 Cal. App.2d 213, 314 P.2d 182, 184 (1957), stated much the same thing:

"The difficulty of making an apportionment does not relieve the commission of the duty imposed on it by statute."

If the Bureau wishes to invoke the aggravation statute in a proper case (but not this

one), it should do so after receiving sufficient medical testimony during a properly conducted evidentiary hearing. We adopted the so-called "usual exertion" rule in the first *Stout* decision and we deem it pertinent that we acknowledge that the Forty-fifth Legislative Assembly, in Senate Bill 2158, amended § 65–01–02(8), NDCC (effective July 1, 1977), by inserting in the definition of "injury" the following language: "If an injury is due to heart attack or stroke, such heart attack or stroke must be causally related to the worker's employment, with reasonable medical certainty, and must have been precipitated by unusual stress."

The judgment is affirmed.

ERICKSTAD, C. J., and PAULSON and SAND, JJ., concur.

VOGEL, Justice, concurring specially.

I concur, but solely on the ground that every issue involved in this appeal was finally determined in the first appeal. *Stout v. North Dakota Workmen's Compensation Bureau*, 236 N.W.2d 889 (N.D.1975). I do not concur with any suggestion that the so-called "apportionment statute," Section 65–05–15, N.D.C.C., is or might be applicable to cases such as this or any other particular type of case. Whether it applies to any case will depend on the facts of that case.

I

This appeal involves the same facts as the previous one. In the former appeal we remanded the case ". . . to the Bureau for disposition in accordance with this opinion." 236 N.W.2d at 894. "This opinion," of course, was the majority opinion.

Instead of complying with the mandate of this court, and without even filing a petition for rehearing in this court, the Workmen's Compensation Bureau entered new findings of fact applying the so-called "apportionment statute," and made an award of 50 percent of the death benefits to which the widow was entitled. It had no medical evidence to support that determination. As the majority opinion says, in milder language than it might have used, the Bureau "apparently applied § 65–05–15, NDCC, as mentioned in the concurring opinion of Justice Sand, . . ." Of course, the Bureau had no right to do so. The majority opinion is the law of the case and binding on the parties. As we said in *Desautel v. N. D. Workmen's Compensation Bureau*, 75 N.D. 405, 414, 28 N.W.2d 378, 384 (1947),

"Under well settled rules, generally recognized by the courts of this country and frequently recognized and applied by this court, the decision on the former appeal became and is the law of the case.

"The facts established upon the trial being in all material respects the same as those alleged in the complaint, the decision on the former appeal is decisive of the question raised on this appeal."

I consider the action of the Bureau to be an arrogant defiance of the considered opinion of the highest court of this State. That defiance made it necessary for the widow of the deceased worker, whom we had held entitled to death benefits, to go to the expense and trouble of an appeal to the district court. That court properly ruled against the Bureau. Still not satisfied, the Bureau then appealed to this court. I consider that appeal to be wholly unjustified and frivolous, and one for which costs should be assessed in favor of the opposing party, as in *Bellon v. Bellon*, 237 N.W.2d 163 (N.D.1976).

II

I part company with the majority opinion in its easy assumption that the apportionment statute, Section 65–05–15, N.D.C.C., would apply if it had been invoked in this case at a proper time and in a proper way. I am by no means convinced that this is correct. The few other States which have similar laws have had great difficulty in construing them and seldom have applied them as generally as the majority opinion would lead one to believe. For example, in *Redmond v. Workmen's Compensation Appeals Board*, 36 Cal.App.3d 302, 111 Cal.

Rptr. 530 (1973), the Court of Appeals held that full death benefits were payable unless it could be demonstrated as a reasonable medical probability that a suicide which was work-related would have resulted "in the absence of the industrial injury." It cannot be contended that Stout's death would have occurred when it did in the absence of his work-related exertion.

Other courts have held that the apportionment statute does not apply to conditions which were unknown prior to the injury and which had not affected the ability of the employee to do his work. Stout's condition was unknown and did not affect his ability to do his work until his work-related injury produced his death. The cases are collected in 2 Larson's Workmen's Compensation Law, Section 59.20.

The same section describes apportionment statutes as "harsh" and says, at page 10–269:

"The courts, for their part, have generally tempered the harshness of apportionment statutes whenever a doubt could be resolved in the direction of constricting their scope."

In view of the many uncertainties and possible ramifications in the eventual development of case law, I would not indicate now what effect, if any, the apportionment statute might have on cases like this one or any other type of case in which the issue is appropriately raised.

### III

Certain parts of the majority opinion, it seems to me, are irrelevant to any issue before us. Certainly, cases like *Tingle v. Board of County Commissioners*, cited in the majority opinion, offer no aid, since we have no provision in our statute similar to that underlined in the majority opinion, which says that "only acceleration of death * * * attributable to the accident shall be compensable."

Furthermore, I fail to see what the recent change in the statute [Senate Bill 2158, 1977 legislative session] has to do with this case. Our former opinion in this case declared that the law was that death caused by work-related usual exertion was compensable. The Legislature, at the urging of the Workmen's Compensation Bureau, changed that law, effective July 1, 1977. Stout's death occurred November 26, 1973. It was, and is, compensable in full, regardless of what the Legislature did in 1977. The Legislature chose to put North Dakota into the dwindling minority [about one-fourth] of States which adhere to the unusual-exertion test, which is authoritatively described as historically incorrect, logically unsound, and impractical in operation [1A Larson's Workmen's Compensation Law, §§ 38.61–38.63, pp. 7–98 to 7–102]. That is the legislative privilege, but it has nothing to do with this case.

As stated, I concur in the result of the majority opinion, on the sole ground that the issues were all resolved in the previous appeal which is the law of the case, and I decline to join in any suggestion that the apportionment statute is applicable to this or any other particular type of case. Its application will depend on the facts of each case.